IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KELLY BALKIN,

    Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA and HOGAN LOVELLS, LLP LONG TERM DISABILITY PLAN,

    Defendants.

Case No.

**COMPLAINT**

## JURISDICTION

1. Plaintiff brings this action for declaratory, injunctive, and monetary relief pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA § 502(e) and (f), 29 U.S.C. §1132(e) and (f), and 28 U.S.C. § 1331.

## VENUE

2. Venue lies in the District of Maryland pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the subject employee benefit plan is administered in this District.

## THE PARTIES AND THE PLAN

3. At all relevant times, Plaintiff Kelly Balkin ("Ms. Balkin" or "Plaintiff") was a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Hogan Lovells, LLP Long-Term Disability Plan ("the Plan"). Ms. Balkin resides in Sandy Spring, Maryland.

4. At all relevant times, the Plan was an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), sponsored by Hogan Lovells LLP ("Hogan Lovells").

5. At all relevant times, the Plan offered long-term disability benefits to employees, including Plaintiff, through an insurance policy issued by Defendant Unum Life Insurance Company of America ("Unum"), with the group policy number GP-882750. At all relevant

times, Unum was responsible for making decisions on claims under the Plan.

**FACTS**

**A.     Plaintiff's Work and the Plan's Definition of Disability.**

6.     Ms. Balkin began working as an associate attorney at Hogan Lovells in November 2018. Her position at Hogan Lovells required drafting and revising business agreements, including international multi-million-dollar merger and acquisition agreements, and communicating with clients constantly to keep them apprised of changes as the agreements moved through the negotiations process.

7.     On a daily basis, associate attorneys at Hogan Lovells must maintain sharp focus for extended periods of time. The job requires processing complex information, distilling key points, working to a deadline, dealing with clients, analytical skills, logical thinking ability, attention to detail, and sound judgment. Attorneys are expected to work quickly, efficiently, and without error, and the position involves continuous computer and keyboard use over very long work hours (often 12 hours or more per day).

8.     Under the terms of the Plan, a person is disabled if they are "limited from performing the material and substantial duties of [their] regular occupation due to [their] sickness or injury; and [they] have a 20% or more loss in [their] indexed monthly earnings due to the same sickness or injury."

**B.     Plaintiff's Medical Condition and Departure from Work.**

9.     In June 2019, Ms. Balkin began experiencing fibromyalgia symptoms: she developed severe joint pain and sharp pain in her upper abdomen, and she became severely fatigued to the point that she would fall asleep in the middle of the day for hours at a time.

10.     Ms. Balkin's condition rapidly worsened, and by July 2019, her pain was so severe that it was distracting and preventing her from performing her work, and her exhaustion caused her to fall asleep while attempting to do work.

11.     Ms. Balkin ceased working on July 15, 2019. She was devastated about leaving her job.

12. Ms. Balkin struggled to receive an appropriate diagnosis and treatment plan for the symptoms she began experiencing in June 2019. Because she had been diagnosed with Crohn's disease in 2015, doctors initially suspected her new symptoms were caused by a Crohn's flare-up. However, the new symptoms were more severe and lasted longer than symptoms she had experienced during Crohn's flares in the past, and she had not experienced joint pain before. Doctors at the Mayo Clinic later confirmed that the symptoms Ms. Balkin began experiencing in June 2019 are attributable to fibromyalgia rather than Crohn's disease.

13. In August 2019, Ms. Balkin was evaluated by Dr. Biju Alex, who opined that Ms. Balkin did not have Crohn's disease. Ms. Balkin's fatigue, abdominal pain, and joint pain persisted, despite treatment and consultation with multiple providers.

14. Over the last year, Ms. Balkin's pain has worsened. The pain was concentrated in her knees and legs when it first appeared in June 2019, but it has spread to her arms, hands, hips and back.

15. Since being diagnosed with fibromyalgia, Ms. Balkin has tried multiple medications without significant success. Her joint and muscle pain and extreme fatigue prevent her from engaging in daily activities such as cooking, doing laundry, and climbing stairs in her home. As a result of pain and fatigue, Ms. Balkin's mental ability and concentration have also declined such that simple tasks, such as writing an email, are challenging for her to accomplish.

C. **Ms. Balkin is Disabled as a Result of Fibromyalgia.**

16. At all times since July 18, 2019, Ms. Balkin's fibromyalgia has prevented her from performing the material and substantial duties of her occupation. The material and substantial duties of Ms. Balkin's own occupation are those required of an associate attorney working on high-stakes, multi-million-dollar merger and acquisition agreements in a fast-paced environment at a large international law firm.

17. Ms. Balkin was diagnosed with fibromyalgia and multifactorial fatigue at the Mayo Clinic, where three different doctors found upon evaluation that she met the diagnostic criteria for these conditions. After an evaluation in May 2020, Dr. Arment concluded that Ms.

Balkin's ongoing pains are related to fibromyalgia. Dr. Wight diagnosed Ms. Balkin with fibromyalgia in May 2020. A Fibromyalgia Symptom Measurement assessment conducted by the Mayo Clinic's Fibromyalgia and Chronic Fatigue Clinic reveals that Ms. Balkin's symptoms are sufficiently severe and pervasive to warrant a fibromyalgia diagnosis.

18. The fibromyalgia symptoms Ms. Balkin experiences are debilitating. Beginning in June 2019, Ms. Balkin has experienced such severe pain in her legs, knees, and upper abdomen that she constantly feels like she's "been hit by a truck." The severe pain also interrupts her sleep.

19. Due to severe pain and fatigue, Ms. Balkin cannot sustain minor tasks, such as cooking or doing laundry, for extended periods of time. Her legs become stiff and painful when she is up. Because the pain has extended to her hands, typing has become very uncomfortable. Ms. Balkin makes every effort to move as much as she can, but she must temper her activity to avoid triggering more pain and fatigue. As a result of pain, fatigue, and medication side effects, Ms. Balkin's cognitive ability has declined, and it is challenging for her to pay attention to details.

20. Ms. Balkin's medical notes from visits with Dr. Rai, Dr. York, Dr. Arment, Dr. Chedid, Dr. Wight, and Dr. April show the unrelenting nature of her pain and fatigue. Ms. Balkin's providers have attempted various treatment options, such as Prednisone, Prozac, Humira, Lyrica and Cymbalta. Nevertheless, her pain and fatigue persist and remain debilitating.

21. Ms. Balkin's primary care physician, Dr. York-Jordan, concluded that Ms. Balkin could not perform the physical occupational demands of her job on a full-time basis because "her joint pain, nausea, fatigue, and brain fog were so debilitating at times multiple days a week she was unable to get out of bed."

22. Dr. York-Jordan also concluded that Ms. Balkin could not perform the mental and cognitive demands of her job on a full-time basis because "her ability to concentrate, make decisions, deal with people, and plan activities were severely impaired." Likewise, Dr. Wight

opined that Ms. Balkin was no longer able to function in the same capacity she was capable of prior to symptom onset.

23. A disability evaluation conducted by Dr. Miller, a physical therapist at Rehab at Work, revealed that Ms. Balkin "demonstrated a 23-minute continuous typing tolerance before discontinuing the task due to complaint of a headache and becoming drowsy." Dr. Miller concluded that "overall, Ms. Balkin demonstrated deficits in productivity with a decreased tolerance to sustained and/or repetitive tasks."

24. Despite Ms. Balkin's passion for her work, her fibromyalgia renders her unable to perform the material and substantial duties of an associate attorney working in the corporate practice at Hogan Lovells. The extreme fatigue she experiences is related to her joint and muscle pain from fibromyalgia and makes it impossible to stay alert and focused for long periods of time, let alone twelve-hour workdays on international hours.

25. Ms. Balkin requires long periods of rest in the middle of the day, which precludes her from completing work, such as drafting agreements, contacting clients, and meeting deadlines in the fast-paced environment of her practice. Furthermore, the severe pain Ms. Balkin experiences in her legs, arms, hands, hips, and back interferes with her focus and cognition, such that she can no longer keep track of details–one of the most important aspects of her job.

**D.    Unum's Denial of Ms. Balkin's Claim is Meritless.**

26. In denying Ms. Balkin's claim, Unum erroneously found that Ms. Balkin had a preexisting condition after conducting an insufficient and biased pure-paper review of Ms. Balkin's claim. Confronted with evidence that Ms. Balkin's disability is not caused by a pre-existing condition, Unum changed its position, determining that her fibromyalgia-related pain and fatigue is not disabling.

    a.    **Ms. Balkin's Disability is Not a Result of a Pre-Existing Condition as Defined by the Plan.**

27. Under the Plan, a person has a pre-existing condition if they "received medical

treatment, consultation, care, or services including diagnostic services, or took prescribed drugs or medicines in the 3 months prior to [the] effective date of coverage; and the disability begins in the first 12 months after [the] effective date of coverage." That is, Ms. Balkin has a pre-existing condition only if she received treatment or care for the disabling condition during the period from August 14, 2018, to November 13, 2018.

28. In its initial denial of Ms. Balkin's claim, Unum incorrectly determined that Ms. Balkin was subject to the Plan's pre-existing condition exclusion based on a single doctor's visit in August 2018 for symptoms unrelated to her disability. Ms. Balkin was not, at that time, experiencing the joint pain or severe fatigue that has rendered her disabled.

29. In August 2018 Ms. Balkin was treated for Crohn's disease, chronic anal fissure, chronic diarrhea, and altered bowel function. During this visit, Ms. Balkin reported having one episode of abdominal pain, nausea, and vomiting, which resolved after one day. Though the visit summary indicates that Ms. Balkin complained of fatigue, the notes also stated that Ms. Balkin was "feeling well." Thus, even if Ms. Balkin reported fatigue during this visit, it was insignificant enough that she was feeling well in spite of it. After this visit, Ms. Balkin did not seek further treatment for these gastrointestinal symptoms.

30. The extreme fatigue and upper-abdominal pain for which Ms. Balkin sought treatment in June 2019 are distinct from the symptoms she experienced and sought treatment for in August 2018. In June 2019, Ms. Balkin complained of her worsening condition over two to three weeks, including abdominal pain, fatigue, joint pain, tremors, and nausea. The persisting nature and severity of these symptoms, which were disabling, is markedly different from the episode Ms. Balkin reported in August 2018, which did not preclude her from performing her work.

31. The mild abdominal pain and fatigue Ms. Balkin experienced in August 2018 overlaps with her fibromyalgia symptoms by pure coincidence. Ms. Balkin was not treated for fibromyalgia during the look-back-period, and fibromyalgia is the condition for which she seeks disability benefits. Thus, the pre-existing condition exclusion does not apply.

### b. Ms. Balkin's Fibromyalgia Symptoms are Sufficiently Severe to Render Her Disabled.

32. After Ms. Balkin submitted her initial appeal showing that she does not have a pre-existing condition, Unum issued a second denial letter determining that Ms. Balkin's joint pain did not require restrictions or limitations in her functional capacity that would preclude her from performing her occupational duties.

33. Unum reached this conclusion based on the opinions of three reviewing doctors, two of whom are employed directly by Unum and none of whom ever examined Ms. Balkin or spoke to her or any of her treating doctors.

34. These physicians impermissibly discounted Ms. Balkin's self-reported pain. This is a critical flaw in Unum's analysis because the extent to which fibromyalgia is disabling depends on the degree of pain and fatigue it produces.

35. Further, Unum erroneously relied on Ms. Balkin's imaging which showed no arthritis or neurological abnormalities. Fibromyalgia is a disease diagnosed based on tenderness at certain standard trigger points on the body, not using x-ray or other radiography.

36. Contrary to Unum's assertion, Ms. Balkin has received treatment commensurate with the severity of her fibromyalgia symptoms. She was unable to see doctors in person between February and May 2020 due to the COVID-19 pandemic, but she continued to pursue a diagnosis and appropriate care during that time and all other relevant times.

37. There is no medical evidence supporting Unum's determination that Ms. Balkin can perform sedentary work, which requires sitting for most of a 12-hour workday, keyboard use throughout the day, and the performance of sustained tasks.

38. Ms. Balkin appealed Unum's denial of her claim for LTD benefits on December 23, 2020. She submitted a supplement to her appeal, responding to evidence generated by Unum and providing additional evidence on April 15, 2021. Unum denied the appeal by letter on April 22, 2021. Ms. Balkin has exhausted her administrative remedies.

## CLAIM FOR RELIEF
### (ERISA§ 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B))
### (Claim for Benefits)

39. Plaintiff realleges and incorporates herein paragraphs 1 through 41 as though fully set forth herein.

40. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan, and/or to clarify her rights to future benefits under the terms of a plan.

41. At all relevant times, Ms. Balkin has been entitled to long-term disability benefits under the Plan for her disabling physical conditions.

42. By denying Plaintiff's application for long-term disability benefits under the Plan, and by related acts and omissions, Unum has violated and continues to violate the terms of the Plan and Ms. Balkin's rights thereunder.

WHEREFORE, Plaintiff requests that judgment be entered in her favor and against Defendants as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

A. Declare that Defendants have violated the terms of the Plan by denying Ms. Balkin's claim for long term disability benefits from January 14, 2020 to the date of judgment.

B. Order Defendants to pay long-term disability benefits to Plaintiff pursuant to the terms of the Plan from January 14, 2020 through the date judgment is entered herein, together with prejudgment interest on each and every such monthly payment through the date judgment is entered herein;

C. Declare Plaintiff's right to receive future long-term disability benefit payments under the terms of the Plan;

D. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein

pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

  E. Provide such other relief as the Court deems equitable and just.

Dated: June 29, 2021        Respectfully submitted,

           By:  /s/Denise M. Clark
              Denise M. Clark (17385)
              CLARK LAW GROUP, PLLC
              1100 Connecticut Ave., NW, Suite 920
              Washington, D.C. 20036
              Phone: (202) 293-0015
              Fax: (202) 293-0015
              dmclark@benefitcounsel.com

              Nina Wasow (*pro hac vice* application pending)
              FEINBERG, JACKSON, WORTHMAN & WASOW LLP
              2030 Addison Street, Suite 500
              Berkeley, CA 94704
              Phone: (510) 269-7998
              Fax: (510) 269-7994
              nina@feinbergjackson.com