IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KELLY BALKIN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. GLS 21-1623 |
| | * | |
| UNUM LIFE INSURANCE COMPANY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION**

Pending before the Court is the "Motion for Discovery and Ruling on Standard of Review," filed by Plaintiff Kelly Balkin ("Plaintiff") (ECF No. 25) ("Plaintiff's Motion"). The issues have been fully briefed. (ECF Nos. 28, 29, 30). Upon review of the pleadings, the Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART**.

I.  **BACKGROUND**

On June 30, 2021, Plaintiff filed her Complaint against Defendant, asserting a claim for disability benefits pursuant to an employee benefit plan funded by an insurance policy issued by Defendant Unum Life Insurance Company of America ("Defendant") to her former employer. (ECF No. 1). On January 31, 2022, the parties filed a Joint Status Report, ("JSR"), requesting that the Court enter a scheduling order for litigation. (ECF No. 23). In this JSR, Plaintiff also requested that the Court allow the parties to brief preliminarily the issues of: (1) what standard of review applies; and (2) whether extra-record discovery would be permitted. (*Id.*, pp.1-2). On April 18, 2022, the Court issued a Memorandum Opinion and Order, setting forth its preliminary findings on the matter and setting the briefing schedule for Plaintiff's Motion. (ECF No. 24). Plaintiff filed

her motion on April 30, 2022, to which Defendant filed its response on May 13, 2022. (ECF Nos. 25, 29).[1] Plaintiff filed her reply on May 19, 2022. (ECF No. 30).

The parties also uploaded, under seal, the ERISA record. (ECF No. 31). In relevant part, the record contains a choice of law provision selecting the law of the District of Columbia to govern the Benefit Plan ("Plan"). (ECF No. 31-1, p. 60).

## II. DISCUSSION

In support of her Motion for extra-record discovery, Plaintiff argues the following: (1) Maryland law should apply, requiring the Court to apply a *de novo* standard because Maryland law prohibits use of discretionary clauses; and (2) even if the law of the District of Columbia (D.C.) applies, the standard of review should be *de novo* because D.C. prohibits the use of discretionary clauses. (ECF No. 25-1, pp. 1-3 "Memorandum"). In the alternative, if the Court applies an abuse of discretion standard, Plaintiff asserts that: (1) Defendant operates under a structural conflict of interest; and (2) Plaintiff should be permitted to pursue discovery related to Defendant's conflict of interest because there are gaps in the ERISA record. (Memorandum, pp. 3-7).

Defendant asserts the following: (1) D.C. law applies, but neither Maryland law nor D.C. law demand that the Court apply a *de novo* standard of review; (2) it concedes that it has a structural conflict of interest; and (3) Plaintiff has identified no gap in the ERISA record supporting extra-record discovery. (ECF No. 29 pp. 1-5 "Opposition").

**A. Choice of Law**

Plaintiff argues that this Court should not enforce the choice of law provision selecting D.C. law because: (1) Plaintiff lives and worked in Maryland; and (2) there is no evidence in the ERISA record of Defendant having a substantial relationship to D.C. (Memorandum, pp. 2-3).

---

[1] Defendant also filed a supplement to the administrative record, filed at ECF No. 31, in which it included a privilege log, on May 12, 2022. (ECF No. 28).

Accordingly, she argues that under any of the tests employed by the other circuits in determining whether to enforce a choice of law provision in an ERISA contract, the clause should not be enforced, and Maryland law should apply. (*Id.*, pp. 2-3). Defendant counters that this Court should adopt the approach of the Tenth Circuit and find that because Plaintiff's employer has its headquarters in D.C., the Court should enforce the choice of law provision to promote uniformity and efficiency. (Opposition, pp. 1-3).

Although the Fourth Circuit has not addressed the precise issue of how to determine whether to enforce a choice of law provision in an ERISA plan,[2] this Court has previously detailed some of the approaches taken by other circuits. (ECF No. 24). As set forth below, Plaintiff has not established that enforcing the choice of law provision would be inappropriate under any of the other circuits' standards. *See Jimenez v. Sun Life Assur. Co. of Canada*, 486 F. App'x 398, 408 (5th Cir. 2012) (analyzing enforcement of choice of law provision in ERISA plan under other circuits' tests).

The Eighth, Ninth, and Eleventh Circuits have held that a choice of law provision in an ERISA plan should be enforced "if not unreasonable or fundamentally unfair." *Brake v. Hutchinson Tech. Inc. Group Disability Income Ins. Plan*, 774 F.3d 1193, 1197 (8th Cir. 2014) (enforcing choice of law provision selecting state containing employer's headquarters); *Wang Laboratories, Inc. v. Kagan*, 990 F.2d 1126, 1128–29 (9th Cir. 1993) (enforcing choice of law provision selecting state where employer and administrator had headquarters, even though employee lived, worked, and suffered injury in a different state); *Buce v. Allianz Life Ins. Co.*, 247

---

[2] The Fourth Circuit has, however, applied the Seventh Circuit's choice of law rules in a case transferred from the Southern District of Illinois, regarding the enforcement of a choice of law provision determining which state's limitations period applied in an ERISA case. *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 370 (4th Cir. 2015). This case is factually distinguishable from the instant case because the Fourth Circuit, applied the transferor court choice-of-law rules pursuant to its interpretation of 28 U.S.C. § 1404(a), and applied the Seventh Circuit's holding in *Berger v. AXA Network LLC*, 459 F.3d 804, 813 (7th Cir.2006) (applying the forum state's statute of limitations unless another state has more significant contacts with the dispute).

3

F.3d 1133, 1149 (11th Cir. 2001) (enforcing choice of law provision where plaintiff did not provide any caselaw suggesting that doing so would undermine ERISA policy). The party contesting the choice of law provision has the burden to show that the provision is unreasonable or unfair. *Wang*, 990 F.2d at 1129.

The Tenth Circuit has recently held that if a plan "has a legitimate connection to the State whose law is chosen," then ERISA's goals of efficiency and uniformity require a court to enforce the choice of law provision. *Ellis v. Liberty Life Assurance Co. of Boston*, 958 F.3d 1271, 1288-1289 (10th Cir. 2020) (enforcing choice of law provision selecting state where employer is incorporated and has principal place of business).

The Sixth Circuit utilized the Restatement (Second) of Conflict of Laws § 187 to decide whether to enforce the choice of law provision in an ERISA plan, where two former spouses of the decedent were litigating which of them was the "surviving spouse" entitled to benefits under his plan. *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 923 (6th Cir. 2006). The court held that two possible exceptions could apply to prevent the enforcement of the choice of law provision: (1) where the chosen state had "no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice;" and (2) where applying the provision would be contrary to a "fundamental policy" of the state whose law would be applied, and where this state had a greater interest in the issue than the state named in the choice of law provision. *Id.* at 924. First, the court found that the first exception did not apply because the plan was issued in the chosen state and the decedent's employer was headquartered there. *Id.* Second, the court found that the second exception did apply, not merely because the end result would be different depending on which state's law applied, but because the two states' laws placed the burden of proof on different parties, ultimately demonstrating a fundamental policy related to

which party "deserves protection" from the law regarding the validity of her marriage. *Id.* at 924-927. Accordingly, the court did not enforce the choice of law provision. *Id.* at 927.

In this case, Plaintiff asserted that: (1) she lived and worked in Maryland; (2) Defendant is headquartered in and handled her claim in Tennessee, but that the policy identifies Defendant's address as being in Maine and that there is no evidence in the administrative record of Defendant having a substantial relationship to D.C.; and (3) her employer has "thousands of employees in fifteen offices in the United States, including in Maryland," but concedes that the "primary U.S. office is in D.C." (Memorandum, pp. 2-3, 3 n.1). Moreover, Plaintiff does not contest Defendant's assertion that her employer is headquartered in D.C. (Opposition, p. 1; Reply). Finally, Plaintiff argues that Maryland law should apply because Maryland has banned the enforcement of discretionary clauses in ERISA plans, and this constitutes an important state policy. (*Id*, p. 3). Upon review of the ERISA record, the Plan lists D.C. as its "situs." (ECF No. 31-1, pp. 7, 34). *See* 83 Fed. Reg. 28912 (June 21, 2018) (describing an ERISA plan's situs as "typically the location of the company's headquarters and/or the State where most of the employees reside"). The Plan also lists Plaintiff's employer's address as being located in D.C. (ECF No. 31-1, p. 103).

First, under the approach taken by the Eighth, Ninth, and Eleventh Circuits, Plaintiff has not established that enforcing the choice of law provision would be unreasonable or fundamentally unfair, because the headquarters of Plaintiff's employer is located in D.C. In addition, Plaintiff has failed to distinguish her situation from, *e.g.*, *Wang, supra*, where the Ninth Circuit enforced a choice of law provision selecting the state where the employer was headquartered, even though the employee worked and lived in a different state. Accordingly, under this approach, the choice of law provision should be enforced.

Second, under the approach taken by the Tenth Circuit, Plaintiff has not established that there is no "legitimate connection" between the Plan and D.C. because Plaintiff's employer is headquartered there. *Ellis*, 958 F.3d at 1288-1289. Accordingly, the Court finds that under the analysis articulated by *Ellis*, *supra*, the choice of law provision should be enforced.

Finally, under the approach taken by the Sixth Circuit, Plaintiff has not established that either of the two exceptions applies. Regarding the first exception, Plaintiff argues that Defendant has no "substantial relationship to D.C." (Memorandum, p. 3). However, in *DaimlerChrysler*, *supra*, the Sixth Circuit held that the first exception did not apply where the employer was headquartered in the selected state. 448 F.3d at 924. Regarding the second exception, Plaintiff argues that Maryland's ban on discretionary clauses is an "important state policy" and that Maryland has a greater interest in this dispute than D.C. (Memorandum, p. 3). However, Plaintiff does not provide support for these assertions. Nor does she explain how this issue of whether to allow discretionary language in an ERISA plan constitutes a "fundamental state policy" as outlined by the Sixth Circuit. Accordingly, the Court finds that under the analysis articulated by the Sixth Circuit, the choice of law provision should be enforced.

In sum, Plaintiff has not established under any of the existing approaches utilized by other Circuits that enforcing the choice of law provision would be unfair or inappropriate.[3] Accordingly, the Court enforces the choice of law provision and applies D.C. law with regard to the standard of review.

---

[3] Plaintiff's reliance on *Mantica v. Unum Life Ins. Co. of Am.*, Civ. No. RDB-18-0632, 2019 WL 1129438, at *7 (D. Md. Mar. 12, 2019), is misplaced. In *Mantica*, the court presumed without deciding that Maryland law controlled, finding that the insurance plan in question was amended with an effective date in 2014, after the 2011 implementation of Maryland Insurance Code Ann. § 12-211, which bans the use of discretionary clauses. 2019 WL 1129438, at *7. In addition, this plan was issued in Maryland and the parties did not appear to dispute which state's law controlled. (*See Mantica*, RDB-18-632, ECF No. 1, ¶ 7). In this case, the Court squarely addresses whether Maryland law applies and finds that it does not.

**B. Standard of Review under D.C. Law**

This Court previously found, and the parties do not dispute, that the Plan confers discretion upon the administrator through express language. (ECF No. 24). *See also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989); *Woods v. Prudential Ins. Co. of America*, 528 F.3d 320, 322 (4th Cir. 2008). If the administrator or fiduciary has "discretionary authority to make eligibility determinations, the review is for abuse of discretion." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008).

Plaintiff argues, however, that D.C. prohibits the enforcement of discretionary clauses in insurance plans, and therefore, a *de novo* standard should apply. In support of this assertion, Plaintiff cites to a June 14, 2011 Notice issued by the D.C. Department of Insurance, Securities and Banking ("Department"). Plaintiff cites to no caselaw to support the assertion that this Notice prohibits discretionary clauses, and on its face, the Notice appears to warn insurers that the Department **will** examine discretionary clauses to see if they can be used to improperly deny claims. (ECF No. 29-1 "Notice") (emphasis supplied). The Notice further provides that the Department prohibits "Sole Discretionary language and other types of Discretionary Clauses in policy forms and **will** request changes to the policy form." (Notice, p. 2) (emphasis supplied). This provision appears to concern the **future** review of policy forms and the potential that the Department will request changes to those forms. (emphasis supplied). However, the Court is not persuaded that the Notice conclusively bans the enforcement of all discretionary clauses in D.C. Accordingly, the Court finds that an abuse of discretion standard applies.

**C. Discovery**

As this Court has found previously, a plaintiff may be permitted to seek extra-record discovery in an ERISA case if she can establish that: (1) the plan administrator operates under a

structural conflict of interest; and (2) the administrative record does not contain enough information for the court to determine the likelihood that the conflict influenced the particular benefits decision at issue. *Clark v. Unum*, 799 F. Supp. 2d 527, 532-33 (D. Md. 2011); *see Kane v. UPS Pension Plan Bd. of Trustees*, Civ. No. RDB-11-03719, 2012 WL 5869307, at *4 (D. Md. Nov. 19, 2012) (allowing plaintiff to conduct discovery with respect to records or evidence regarding the administrator's history of claim administration, and past attempts at reducing bias); *Chughtai v. Metropolitan Life Ins. Co.*, Civ. No. PWG-19-848 2019 WL 4199036 at *1 (Sept. 5, 2019) (allowing plaintiff to propound limited interrogatories where plaintiff established that the administrative record did not provide sufficient evidence to determine whether the benefit decision was affected by bias). However, where a plaintiff makes a "bare assertion" that "discovery *may* reveal internal incentives . . . to deny claims," without any facts to support bias or gaps in the record, that request should be denied. *Griffin v. Hartford Life & Accident Ins. Co.*, Civ. No. 16-24, 2016 WL 8794470, at *2 (W.D. Va. Sept. 27, 2016). The necessity of extra-record evidence should be carefully scrutinized, to prevent the litigation from shifting "away from determining the reasonableness of individual claims decisions, and toward exhaustive scrutiny of the general fairness of the administrator's business practices." *Clark*, 799 F. Supp. 2d at 533.

In this case, Plaintiff asserts that she should be allowed to seek discovery pertaining to Defendant's conflict of interest for several reasons. Defendant concedes that it has a structural conflict of interest. (Opposition, p. 3). However, Defendant argues that Plaintiff has not identified any facts or evidence that the administrative lacks, nor has she pointed to evidence of bias in from the administrative record from which the Court could infer that the conflict of interest influenced Plaintiff's benefit decision. (*Id.*, p. 5).

As set forth below, Plaintiff has met her burden of convincing the Court that some limited extra-record discovery is appropriate.

### 1. *Reviewing Physicians*

First, Plaintiff asserts that the administrative record contains gaps related to the doctors who conducted the review of Plaintiff's medical files. Specifically: (1) Defendant did not conduct an independent medical examination, instead relying "exclusively on file reviews" by Drs. Nosaka, Boomes, and Norris; (2) the administrative record is silent on the nature of the relationship between UNUM and Drs. Nosaka, Boomes and Norris, including whether they were UNUM employees or independent contractors who were paid an unidentified amount for their opinions and were financially motivated to recommend denial of Plaintiff's claim; how much the file reviewers were paid for their opinions; (3) the administrative record is silent on whether the past opinions of these file reviewers "overwhelmingly concluded" that claimants were not disabled; (4) Dr. Boomes has been criticized by the Tenth Circuit in *McMillan v. AT&T Umbrella Benefit Plan No. 1*, 746 F. App'x 697, 704 (10th Cir. 2018), for giving conclusory opinions about a claimant's work capacity without sufficient analysis; and (5) even though the administrative record identifies Drs. Broomes and Nosaka as internists and Dr. Norris has a specialty in family medicine, there is minimal information about the reviewing doctors' qualifications, specifically regarding fibromyalgia, Plaintiff's disabling condition. (*Id.*, p. 5).

The Court finds that plaintiff has met her burden of establishing that the administrative record does not provide sufficient evidence to determine whether Defendant's decision to deny Plaintiff's claim was affected by bias. *See Chughtai*, 2019 WL 4199036, at *2 (permitting limited discovery, where plaintiff alleged that reviewing physicians did not conduct an examination but

9

only reviewed files and provided a deficient analysis). Accordingly, the Court grants Plaintiff's request to conduct extra-record discovery on these topics.

Plaintiff proposes three requests of production of documents and/or interrogatories. (Memorandum, p. 7). The Court grants Plaintiff's requests for interrogatories:

(1) identifying the nature of [Defendant's] financial relationship with Drs. Nosaka, Broomes, and Nooris and /or any vendor(s) with whom they are associated;

(2) regarding the number of claims [Defendant] has referred to Drs. Nosaka, Broomes, and Norris, and the number of cases in which each doctor found claimants to be disabled;

(3) regarding Dr. Nosaka's, Dr. Broomes', and Dr. Norris' expertise or experience with fibromyalgia.

The parties are further ordered to file a Joint Status Report ("JSR") that contains the revised briefing schedule for their cross motions for judgment on the administrative record.

2. *Policies and Procedures*

Second, Plaintiff states that the administrative record does not include any "policies or procedures" considered by Defendant in handling Plaintiff's claim. (*Id.*, p. 6). Plaintiff contends that any guidelines to prevent the structural conflict of interest would be especially important because disability insurers have "widespread skepticism" about fibromyalgia. (*Id.*). Plaintiff seeks permission to issue a request for production of documents regarding Defendant's claims-handling guidelines, particularly any guidelines pertaining to investigation of fibromyalgia claims. (*Id.*, p. 7).

The Court finds that Plaintiff has not presented concrete evidence that any such policies or procedures were "relied upon or submitted, considered, or generated" in reviewing her claim. *Brooks v. Metro. Life Ins. Co.*, 526 F. Supp. 2d 534, 536 (D. Md. 2007)[4] (no extra-record discovery

---

[4] This case predates the Supreme Court's decision in *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). However, this Court finds that the reasoning applied in *Brooks* is consistent with the post-*Glenn* cases in this District finding

of policy document permitted, where plaintiff made only speculative assertions that defendant must have or should have consulted a policy in reviewing her claim) (internal quotation marks omitted); *see Griffin*, 2016 WL 8794470, at *2 (same). Accordingly, the Court will deny this request.

### 3. *Request for Unredacted Record and Other Unspecified Documents*

Finally, Plaintiff avers that the administrative record contains "unexplained redactions," and questions whether: (a) UNUM deprived her of a meaningful opportunity to respond to why it denied her disability claim; and (b) some of the redactions are based on attorney-client privilege, which she argues are inappropriate under the fiduciary exception to that privilege. (Memorandum, p. 6). Plaintiff seeks an order compelling Defendant to produce an unredacted version of all redacted pages, "as well as any documents withheld" by Defendant, arguing that the documents "will shed light on the effect of its financial conflict of interest on its handling of Plaintiff's claim." (Memorandum, pp. 6-7). In support of her argument, Plaintiff cites generally to *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). Plaintiff further states that to the extent the redactions are based on privilege, she "intends to otherwise pursue production of the unredacted pages," even if the Court does not permit discovery. (*Id.*, p. 6 n. 3).

Defendant acknowledged that it failed to provide a privilege log with the administrative record but asserts that it belatedly did so related to the only two redacted pages. Defendant further argues that, if necessary, it is willing to provide the unredacted pages to the Court for its *in camera* review. (Opposition, p. 4 n. 5; *see also* ECF No. 28). At this juncture, the Court will deny as premature the Plaintiff's request for the redacted pages. The parties are hereby ordered to meet

---

that where a plaintiff failed to assert "particularized facts" to demonstrate that the extra-record discovery would be necessary to demonstrate a conflict of interest "in adjudication of *her particular claim*," discovery would be denied. *Reidy v. Unum Life Ins. Co. of Am.*, Civ. No. PX-16-2926, 2017 WL 6368659, at *2 (D. Md. Dec. 13, 2017) (emphasis in original).

and confer, consistent with Local Rule 104.7 (D. Md. 2021), about the dispute. Should the parties be unable to resolve the issue, they shall lay out their respective positions in the JSR that they are required to file.

### III.    CONCLUSION

For the foregoing reasons, the Motion for Discovery filed by Plaintiff will be granted in part and denied in part.

A separate order will follow.

Date: September 19, 2022                                              /s/
                                                                 _____
                                                                 The Honorable Gina L. Simms
                                                                 United States Magistrate Judge