**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| **KELLY BALKIN**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. GLS 21-1623 |
| | ) | |
| **UNUM LIFE INSURANCE COMPANY**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Kelly Balkin, a participant in her employer's long-term disability plan, has filed suit against the plan's administrator, Defendant Unum Life Insurance Company, asserting that Unum wrongfully denied her disability benefits, in violation of 28 U.S.C. 1132(a)(1)(B), the Employee Retirement Income Security Act ("ERISA"). (ECF No. 1).

Pending before the Court are the following: (1) "Defendant's Motion for Summary Judgment" (ECF No. 55) ("Motion"), filed by Defendant Unum Life Insurance Company ("Defendant" or "Unum"); and (2) "Plaintiff's Motion for Judgment Under Rule 52 and Response to Defendant's Motion for Summary Judgment," and memorandum of law in support thereof (ECF Nos. 56, 57) (together the "Counter Motion"), filed by Plaintiff Kelly Balkin ("Plaintiff"). The matter is fully briefed, *see* ECF Nos. 62, 65, so no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023).

For the reasons set forth below, the Motion is **GRANTED**, and the Counter Motion is **DENIED**.

## I.   BACKGROUND

### A.  Unum's Long-Term Disability Insurance Policy[1]

During the relevant time period, Plaintiff worked as an associate attorney at the Maryland office of the law firm of Hogan Lovells, US, LLP ("Hogan Lovells"). (AR 118). Unum serves as the claims administrator and insurer of Hogan Lovells's Long-Term Disability Plan ("the Plan"). (AR 60-115). Plaintiff was a participant in the Plan, which is governed by ERISA. (*Id.*).

#### 1.  *Definition of Disability*

Under the Plan, a participant is disabled when Unum determines that the participant (hereinafter "you" in the Plan):

> you are limited from performing the **material and substantial duties** of your **regular occupation** due to your sickness or injury;
>
> and you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
>
> You are not required to have a 20% or more loss in your indexed month earnings due to the same injury or sickness to be considered disabled during the elimination period.

(AR 76) (emphasis in original).

#### 2.  *Elimination Period*

To be eligible for disability benefits, a participant must be continuously disabled throughout the elimination period. (AR 77, 99). Under the Plan, the elimination period is 180 days. A disability is continuous if it "is due to the same injury or sickness and stops for 180 days or less, per period of recovery, during the elimination period." (AR 77). The Plan further provides that:

> The days that you are not disabled will not count toward your elimination period.

---

[1] All facts in Sections I.A. through I.D. are taken from the Administrative Record ("AR") and the supplemental pages that the parties provided to the AR that were initially withheld. (ECF Nos. 31, 39) (AR, pp. 1-1291).

> You are not required to have a 20% or more loss in your indexed monthly earnings due to the same injury or sickness to be considered disabled during the elimination period.

(*Id.*). A participant will begin to receive benefits when Unum approves the claim, provided that the elimination period has been met and the participant is disabled. (*Id.*)

### 3. *Definitions Relevant to Employment*

The Plan also provides, in pertinent part, the following definitions:

> **SICKNESS** means an illness or disease. Disability must begin while you are covered under the[P]lan.

(AR 102) (emphasis in original).

> **INJURY** means a bodily injury that is the direct result of an accident and not related to any other cause. Disability must begin while you are covered under the [P]lan.

(AR 100) (emphasis in original).

> **MATERIAL AND SUBSTANTIAL DUTIES** means duties that: are normally required for the performance of your regular occupation; and
>
> cannot be reasonably omitted or modified.

(AR 101) (emphasis in original).

> **REGULAR OCCUPATION** means the occupation that you are routinely performing when your disability begins. For attorneys, "regular occupation" means your specialty in the practice of law which you are routinely performing when your disability begins.

(AR 102) (emphasis in original).

### 4. *Pre-Existing Condition & Lookback Period*

Of particular relevance, long-term disability benefits are limited by the Plan's pre-existing condition provision, which bars coverage for "any disabilities caused by, contributed to by, or

resulting from your ... pre-existing condition." (AR 89). A participant has a pre-existing condition if:

> you received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 3 months just prior to your effective date of coverage [the "look-back period"]; and

> the disability begins in the first 12 months after your effective date of coverage.

(AR 89-90).

### 5.  Cessation of Coverage

The Plan provides that coverage ends on "the last day you are in active employment except as provided under the covered layoff or leave of absence provision." (AR 76). The Plan further states that "Unum will provide coverage for a payable claim which occurs while you are covered under the ... [P]lan." (*Id.*).

### 6.  Information Required to Prove Claim

To be eligible for disability benefits under the Plan, a participant must show the following as proof of a claim:

> that you are under the regular care of a physician;

> the appropriate documentation of your monthly earnings;

> the date your disability began;

> the cause of your disability;

> the extent of your disability, including restrictions and limitations preventing you from performing your regular occupation; and

> the name and address of any hospital or institution where you received treatment, including all attending physicians.

> We may request that you send proof of continuing disability indicating that you are under the regular care of a physician. This

> proof, provided at your expense, must be received within 45 days of a request by us.
>
> In some cases, you will be required to give Unum authorization to obtain additional medical information and to provide non-medical information as part of your proof of claim, or proof of continuing disability. Unum will deny your claim, or stop sending you payments, if the appropriate information is not submitted.

(AR 67).

### B. Plaintiff's Medical Condition and Employment

Plaintiff has a history of medical conditions, including abdominal pain that began in 2015. (AR 971). On June 5, 2015, Plaintiff reported to her gastroenterologist, Dr. Rudy Rai, that she was experiencing a variety of symptoms that were impacting her health, namely that she was vomiting and experiencing abdominal pain, heartburn, diarrhea, and nausea. (*Id.*). Dr. Rai performed a series of diagnostic tests related thereto, which ruled out certain conditions, e.g., inflammatory bowel disease. (AR 981-84). In July 2015, Plaintiff underwent a colonoscopy. Thereafter, Dr. Rai diagnosed Plaintiff with Crohn's disease and initially prescribed a medication called Apriso, which Plaintiff stopped taking several months after her Crohn's disease diagnosis. (AR 276, 281, 946).

On July 12, 2018, Dr. Rai examined Plaintiff for the first time since August 10, 2015. (AR 281). Even though Plaintiff reported feeling better over the past few years, she complained to Dr. Rai that she experienced occasional lower abdominal pain and bloating. (*Id.*). On August 29, 2018, Plaintiff returned to Dr. Rai for a follow-up evaluation related to an August 9, 2018 colonoscopy that Dr. Rai had ordered she undergo. (AR 276). During her office visit, Plaintiff reported one episode of abdominal pain, nausea, and vomiting that resolved after a day. (*Id.*).

On November 14, 2018, Plaintiff began working as an associate attorney at Hogan Lovells's Maryland office. (AR 118). The work of an associate attorney requires the following physical demands:

> Sedentary work: mostly sitting, may involve standing or walking for brief periods of time, lifting carrying, pushing, pulling 10 lbs., occasionally. The duties of this occupation would allow for changes in position for brief periods of time throughout the day.
>
> Occasional: handling, fingering, keyboard use.

(AR 581). In addition, the work of an associate attorney requires the following mental/cognitive demands:

> Directing, controlling, or planning activities of others
>
> Influencing people in their opinions, attitudes, and judgments
>
> Making judgments and decisions
>
> Dealing with people
>
> Performing a variety of duties

(*Id.*).

As an associate attorney, Plaintiff worked on high-stakes multimillion dollar mergers and acquisitions that required long, unpredictable work hours and constant communication with clients. (AR 712-13). Thus, Plaintiff regularly worked more than 12 hour days and often worked on the weekends. (*Id.*). Her job responsibilities included drafting and revising nuanced agreements, a detailed process that demanded specificity and diligence. (*Id.*) Plaintiff commuted 45 minutes to and from work until she began experiencing symptoms in 2019. (AR 712).

Specifically, on June 24, 2019, Plaintiff reported to Dr. Rai that her symptoms of abdominal pain, diarrhea, and nausea had worsened in the previous two to three weeks. (AR 722-24). Plaintiff also reported experiencing severe joint pain, malaise, and fatigue. (*Id.*). To combat these symptoms, Dr. Rai started Plaintiff on Apriso and Budesonide, both of which are prescription medications used to treat Crohn's disease and ulcerative colitis. (AR 140, 723). On July 18, 2019, Plaintiff reported that she no longer experienced diarrhea, but her other symptoms remained

unchanged. (AR 140, 726-27). Thereafter, Dr. Rai stopped Plaintiff's Budesonide and prescribed Prednisone, another steroid medication used to treat Crohn's disease and ulcerative colitis. However, Plaintiff's symptoms did not improve while on Prednisone. (AR 728). Dr. Rai also ordered that Plaintiff undergo another round of testing related to her worsening abdominal pain, fatigue, nausea. In addition, Plaintiff received treatment for her Crohn's disease, which included various suggested remedies, such as dietary and nutritional recommendations. (*See, e.g.*, AR 149, 279, 986-87, 1099-1102).

On July 15, 2019, Plaintiff stopped going to work. (AR 118). On July 18, 2019, during another follow-up appointment with Dr. Rai, Plaintiff reported "improvement" in her joint pain and that her diarrhea had resolved. (AR 726). However, Plaintiff reported worsening abdominal pain, fatigue, and nausea. In addition, Plaintiff reported a 10 lb. weight loss from her June 24, 2019 appointment. (*Id.*). Dr. Rai noted in his records that Plaintiff's symptoms of abdominal pain were "more severe and have lasted longer than usual;" he also decided to increase Plaintiff's dosage of Prednisone from 20mg to 30mg daily. (AR 726, 728).

On July 25, 2019, Emily Almog, a physician's assistant for Dr. Rai, completed an attending physician statement. (AR 126-27). In that statement, Ms. Almog wrote that Dr. Rai opined that Plaintiff suffered from Crohn's disease, abdominal pain, and weight loss. (AR 126). The statement also detailed the fact that Plaintiff was on a series of medications related to the treatment of her various symptoms. (*Id.*).

On July 28, 2019, Plaintiff submitted a short-term disability claim, in which she asserted that she suffered from Crohn's disease, abdominal pain, and weight loss. (AR 126-27).

On July 29, 2019, Plaintiff sought a second opinion from a gastroenterologist, Dr. Biju Alex. (AR 853). Dr. Alex reviewed Plaintiff's prior medical history, including colonoscopies

performed, and opined that he had a "very low suspicion" that Plaintiff has Crohn's disease and that Plaintiff's symptoms relate to such condition. (AR 854).

On August 1, 2019, Plaintiff had another follow-up appointment with Dr. Rai, during which she reported that her abdominal pain, nausea, stomach cramps, bloating, fatigue, and weight loss persisted. (AR 731). During that appointment, Plaintiff asked to "taper off of" Prednisone because it adversely impacted her ability to sleep. (AR 730).

On August 19, 2019, Plaintiff consulted with another gastroenterologist, Dr. Nidhi Malhotra. (AR 895). Plaintiff reported to Dr. Malhotra that she was experiencing abdominal pain, bloating, "chronic arthralgias of her knees and hips." (Id.). Although Dr. Malhotra did not provide a definitive diagnosis for Plaintiff's symptoms, Dr. Maholtra opined that Plaintiff likely did not suffer from Crohn's disease. (AR 895-96).

On August 20, 2019, Plaintiff had another follow-up appointment with Dr. Rai. At that time, Dr. Rai recommended that Plaintiff continue to "taper off of" her dosage of Prednisone, and prescribed that Plaintiff begin injections of a medication called Humira every two weeks to address her persisting abdominal and joint pain. (AR 714, 736). Dr. Rai's notes from August 20, 2019 reflect that, despite this new treatment regimen, Plaintiff's symptoms remained the same. (Id.).

On August 29, 2019, Plaintiff visited Dr. Grace Ahn, a rheumatologist, to discuss her joint pain and stiffness. (AR 476). During the visit, Dr. Ahn noted the following: "She is experiencing activity limitation for >3 hour(s) and weakness." (Id.). Dr. Ahn's notes reflect that she questioned whether Plaintiff suffered from Crohn's disease, however Dr. Ahn did not make a formal diagnosis. (AR 475-76).

On September 26, 2019, Ms. Almog completed a note for Dr. Rai in which she indicated that Plaintiff continued to experience abdominal pain without improvement. (AR 146). Ms. Almog

also wrote that Dr. Rai opined that Plaintiff could not return to work in the short term due to her ongoing health issues, however, Dr. Rai did expect that Plaintiff would be able to return to work on October 28, 2019. (*Id.*).

On October 8, 2019, Plaintiff had another appointment with Dr. Rai, during which she reported that she continued to experience abdominal pain, fatigue, and joint pain. (AR 738). Plaintiff also reported continued side effects related to taking Prednisone. (*Id.*). On November 5, 2019, Dr. Rai noted that Plaintiff reported worsening abdominal pain as she was being "tapered off of" Prednisone. (AR 171).

On November 16, 2019, Ms. Almog completed a medical form to Unum in which she wrote that Plaintiff continued to experience severe abdominal pain without significant improvement. Ms. Almog also wrote Dr. Rai's expectation that Plaintiff would be able to return to work by December 9, 2019. (AR 174-76).

On November 19, 2019, Plaintiff met with another gastroenterologist, Dr. Victor Chedid of the Mayo Clinic. (AR 742). Plaintiff's chief complaint to Dr. Chedid was "extreme fatigue." (AR 746). Dr. Chedid opined that Plaintiff did not suffer from Crohn's disease and recommended that Plaintiff "taper off of" Apriso and Prednisone. (AR 745-46).

On December 17, 2019, Plaintiff's primary care physician, Dr. Kathleen York-Jordan, noted on a letter submitted to Unum that Plaintiff experienced fatigue as well as abdominal and joint pain. (AR 179-180).

### C. Plaintiff's Claim for Long-Term Disability Benefits

On December 13, 2019, Plaintiff applied for a long-term disability benefits with coverage to begin on July 18, 2019, the last day that she worked. (AR 2). In support of her claim, Plaintiff submitted medical records generated following her June 2015 Crohn's disease diagnosis, most of

which were gastrointestinal appointments and procedures related to her chronic abdominal and joint pain and fatigue. (AR 126-177). For example, Plaintiff submitted: attending physician's statements noting that Plaintiff suffers from restrictions and limitations caused by Crohn's disease, severe abdominal pain, weight loss, fatigue, diarrhea, nausea, and joint pain (AR 126-27; 129; 174-76); and colonoscopy results revealing Crohn's disease and subsequent follow-up appointments with Dr. Rai to discuss treatment of the same (AR 130-173). Also submitted in support of her disability claim was a December 17, 2019 letter completed by Dr. York-Jordan. In that letter, Dr. York-Jordan opined that Plaintiff's chronic fatigue, abdominal pain, and joint aches prevented her from returning to work. (AR 179-81). Dr. York-Jordan based her findings solely on Plaintiff's subjective reports of pain and fatigue. (AR 180).

### D.  Unum's Consideration of Plaintiff's Claim

#### 1. Initial Review and Denial

Unum assigned its physicians, Drs. Catriona Shepherd and Robert Nosaka, to review Plaintiff's disability claim. To perform its further review, Unum hired Dr. Stephen Broomes, a physician employed by an outside entity. (AR 537-39, 557-562, 564-56).

Upon reviewing the materials submitted by Plaintiff as well as Drs. Shepherd, Nosaka, and Broomes, Unum denied Plaintiff's claim on April 9, 2020. (AR 579-86). In its denial letter, Unum concluded that:

> "[Plaintiff's] disability was caused by pre-existing conditions and
> [her] conditions that were not pre-existing did not cause [her] to
> have need of restrictions or limitations in [her] functional capacity
> that precluded [her] from continuing to perform [her] occupational
> duties throughout the [Plan]'s elimination period.

(AR 580).

Unum then explained how the record supported its decision, beginning with its analysis of Plaintiff's pre-existing conditions.

a.  Pre-existing Conditions

Unum found that Plaintiff's pre-existing condition-look-back period ran from August 14, 2018 through November 13, 2018. (AR 580). Next, Unum cited to Plaintiff's medical records that referenced the treatment she received for her Crohn's disease and related symptoms during the look-back period. Specifically, the medical records from Dr. Rai, dated August 29, 2018, which "reflect[ed] treatment for [C]rohn's disease, fatigue, weight loss, abdominal bleeding, nausea, stomach cramps and vomiting." (*Id.*). Based on its review of these records, and a July 25, 2019 attending physician's statement completed by Ms. Almog on behalf of Dr. Rai,[2] Unum concluded:

> Since your [C]rohn's, fatigue, weight loss and abdominal pain caused your disability and you received consultation, treatment or diagnostic measures for them during the 3 months before your coverage began, these conditions are pre-existing. The [Plan] excludes coverage for disabilities caused by, contributed to by, or resulting from pre-existing conditions. Therefore, we could not consider if these conditions affected your functional capacity in our review of your claim.

(*Id.*).

b.  Continuously-Disabling Condition

Unum then reviewed Plaintiff's file to determine whether she was continuously disabled by her joint pain. (*Id.*). The denial letter noted that the elimination period ended on January 13, 2020, 180 days after Plaintiff's disability began on July 18, 2019. (*Id.*).

---

[2]Dr. Rai opined that Plaintiff was unable to work due to "[C]rohn's disease, abdominal pain and weight loss." (AR 126-127)

On January 24, 2020, after receiving Dr. York-Jordan's December 17, 2019 letter, Unum requested additional information from her related to Plaintiff's joint aches. (AR 581). On February 21, 2020, Dr. York-Jordan completed a questionnaire, wherein she opined that Plaintiff could not perform the occupational demands of an associate attorney due to her debilitating "abdominal and joint pain, nausea, fatigue, and brain fog." (AR 756-58).

Because Unum's Drs. Shepherd and Nosaka disagreed with Dr. York-Jordan, they reviewed all materials submitted by Plaintiff related to her joint pain during the elimination period. (AR 581-82). These materials included Plaintiff's diagnostic and physical examinations, x-ray findings, medical records from Dr. Rai, and medical records Plaintiff's medication management, all of which were from the period of August 7, 2019 to December 11, 2019. (*Id.*). Dr. Shepherd concluded that there was no evidence to support any impairment related to joint pain given Plaintiff's normal examination results. (AR 581). Unum's second reviewing physician, Dr. Nosaka, opined that Plaintiff's functional capacity did not preclude her from performing the full-time occupational duties of given her unremarkable physical examination and diagnostic findings. (AR 582).

### c.   Ability to Perform Sedentary Occupational Duties

Relying on the opinions of Drs. Shepherd and Nosaka, then, Unum determined that Plaintiff "would not be precluded from performing [her] sedentary occupation on a full-time basis." (AR 582). More specifically, Unum noted the following:

> your records support a finding that apart from your pre-existing conditions of [C]rohn's disease, fatigue, weight loss, abdominal bleeding, nausea, stomach cramps and vomiting you had the ability to perform full-time activity at a level that is consistent with the demands of your occupational duties. Therefore, we find you did not meet the definition of disability relative to your conditions that were not pre-existing. Since your disability throughout your disability

> period was caused by pre-existing conditions, we will not approve
> your claim for benefits and we have closed your claim.

(*Id.*).

The denial letter advised Plaintiff that she had 180 days to appeal Unum's determination, and that Plaintiff could provide new information for Unum to consider in her appeal. (AR 585).

### 2. Appeal

Unum granted Plaintiff's request for an extension to file her appeal. (AR 611, 615). On December 23, 2020, Plaintiff timely filed an appeal of Unum's decision to deny her benefits. (AR 634-805). In her appeal letter, Plaintiff argued that Unum improperly denied her claim for the following reasons: (1) after Unum's denial, Plaintiff was diagnosed with fibromyalgia on May 13, 2020, which rendered her disabled under the Plan; (2) Dr. York-Jordan opined that Plaintiff could not perform the physical and cognitive demands of her occupation due to debilitating joint pain, nausea, and fatigue; (3) Dr. York-Jordan also opined that Plaintiff could not perform the cognitive demands of her occupation because "her ability to concentrate, make decisions, deal with people, and plan activities were severely impaired" by her reported brain fog; (4) Plaintiff could not perform the physical demands of her occupation due to complaints of headaches and drowsiness that limited her keyboard use to 23-minutes of continuous typing; (5) Plaintiff's fibromyalgia was not a pre-existing condition; (6) Unum performed a biased review of Plaintiff's claim by failing to conduct a physical examination of her and by employing the doctors who reviewed Plaintiff's file; (7) Unum ignored evidence of Plaintiff's joint pain; and (8) Unum failed to account for the physical demands of Plaintiff's work in determining that she could perform sedentary work given that her chronic fatigue and abdominal and joint pain prevented her from sitting or standing for prolonged periods of time. (AR 634-643).

To support her appeal, Plaintiff submitted the following: (a) medical records from rheumatologist, Dr. Courtney Arment, dated May 15 and 18, 2020, which included Plaintiff's fibromyalgia diagnosis and findings from a nuclear medicine joint scan and Magnetic Resonance Imaging ("MRI") (AR 748-49; 777-85); (b) May 20, 2020 evaluation of Plaintiff's fibromyalgia and chronic bilateral leg pain by Andrea Eickhoff, R.N. of the Mayo Clinic Fibromyalgia and Chronic Fatigue Clinic (AR 751-54); (c) May 13, 2020 medical records from physical examination performed by Dr. Elizabeth Wight of the Mayo Clinic Fibromyalgia and Chronic Fatigue (AR 787-805); (d) records from Dr. Rai, for the period of June 2018 to November 2019 (AR 722-740); (e) Dr. York-Jordan's attending physician questionnaire, dated February 21, 2020 (AR 756-58); (f) a disability evaluation performed by physical therapist, Dr. Carolyn Miller[3] on August 4, 2020 (AR 760-63); and (g) declarations from Plaintiff, Plaintiff's husband, and Hogan Lovells partner, Kelly Hardy, executed on or about December 16, 2020, September 30, 2020, and September 15, 2020, respectively. (AR 712-20; 770-72).

### 3. Review of Appeal

On January 14, 2021, Unum requested records from Plaintiff's treating physicians to assist in its review of her appeal. (AR 846). Specifically, Unum requested the following records: (a) records dated June 1, 2015 to September 1, 2015, including 2015 and 2018 EGD colonoscopy reports with pathology reports, from Dr. Rai; (b) all records dated July 1, 2019 to present, including EGD colonoscopy reports with pathology reports, from Drs. Alex and Malhotra; and (c) all records dated August 30, 2019 to present from by Dr. Ahn. (*Id.*). Unum encouraged Plaintiff to contact her

---

[3] Dr. Miller's evaluation notes that Plaintiff "participated in Physical Therapy from 3/2020 to 5/2020 for approximately 2 months for strengthening of the lower extremities and core." (AR 762). However, in viewing the AR, the only medical records related to Plaintiff's physical therapy are Dr. Miller's disability evaluation.

physicians to ensure that they provided the requested records by March 1, 2021, at which time it would proceed with its appeal review based on the information available in Plaintiff's file. (*Id.*).

In response to Unum's requests for additional records, Drs. Alex, Malhotra, and Ahn sent medical records to Unum by the March 1, 2021 deadline. Specifically, on January 21, 2021, Dr. Alex sent Unum medical records dated between July 30, 2018 and August 9, 2019, which included: (a) progress notes; (b) endoscopy findings; (c) abdominal ultrasound findings; (d) MRI findings; (e) nuclear medicine hepatobiliary scans; and (f) colonoscopy findings. (AR 852-88). On January 22, 2021, Dr. Malhotra sent Unum medical records dated between June 1, 2019 and August 20, 2019, which included: (a) progress notes; (b) Plaintiff's gastrointestinal ("GI") histology report; and (c) endoscopy findings. (AR 892-929). Finally, on January 25, 2021, Dr. Ahn sent Unum progress notes and medical records dated February 5, 2020. (AR 944-52).

On January 29, 2021, Unum sent Plaintiff a letter informing her that it had received medical records from Drs. Alex, Malhotra, and Ahn, but had not yet received medical records from Dr. Rai. (AR 964). On February 2, 2021, Dr. Rai sent Unum medical records dated June 5, 2015 to August 9, 2018, which included: (a) progress notes; (b) GI diagnostic reports; and (c) endoscopy findings. (AR 967-89).

Under the Plan, Unum had until February 6, 2021 to render its decision on Plaintiff's appeal. (AR 995). On February 3, 2021, Unum sent Plaintiff's counsel a letter memorializing their conversation from earlier that day. (AR 995-96). In that letter, the parties agreed to extend the deadline for Unum to render its appeal decision to March 23, 2021. (AR 995). In addition, Unum informed Plaintiff that it would provide Plaintiff with the information it obtained during its review and allow Plaintiff an opportunity to respond before making its appeal decision. (*Id.*).

On March 5, 2021, Unum sent Plaintiff's counsel a status update on her appeal. (AR 1030). In that letter, Unum reiterated that it would provide copies of the information it obtained during its appeal review, and allow Plaintiff an opportunity to respond to the same before it rendered its final decision by March 23, 2021. (*Id.*). Thereafter, Unum had its employees review and analyze Plaintiff's appeal documents. Specifically, Kelly Marsiano, Senior Vocational Rehabilitation Consultant, conducted a vocational review of Plaintiff's occupational duties. (AR 848-51). In addition, Allison Purtell, R.N., and physician, Dr. Scott Norris conducted clinical reviews of all materials contained in Plaintiff's file. (AR 1003-08, 1209-20).

On March 10, 2021, Unum sent Plaintiff a letter, informing her that:

> Our appeal review of currently available information continues to indicate that benefits are not payable on [Plaintiff's] cla[i]m. The records do not support she is disabled from any of her medical conditions and symptoms. While it is unclear if the nature of her reported abdominal pain as of the claimed date of disability was the same as her reported abdominal pain during the pre-existing condition look back period, the records do not support she is disabled due to abdominal pain continuously through the [Plan] elimination period and beyond.

(AR 1222).

In its March 10 letter, Unum articulated its rationale for denying her claim, and attached to the letter the medical evidence that it considered in its appeal review, which included the following: (1) Plaintiff's prescription history; (2) internal discussions on January 14, 2021 and February 11, 2021; (3) a vocational review by Ms. Marsiano dated January 20, 2021; (4) medical records submitted by Drs. Alex, Rai, Malhotra, and Ahn dated between July 2019 and February 2020; (5) November 2019 and May 2020 medical records from Dr. Chedid; (6) correspondences from Dr. York-Jordan dated December 2019 and February 2020; (7) medical records from Ms. Eickhoff and Drs. Arment and Wight dated May 2020; (8) disability evaluation by Dr. Miller dated August

4, 2020; (9) a declaration from Dr. Michael April dated April 14, 2021; (10) Plaintiff's declaration dated April 15, 2021; (11) telephone calls with Plaintiff and her employer; and (12) clinical reviews of all medical records in Plaintiff's file by Ms. Purtell, R.N. and Dr. Norris, both of whom are employed by Unum. (AR 1222-23).

Unum largely based its denial on the review of Plaintiff's appeal file by its reviewer, Dr. Norris. In brief, Dr. Norris opined that he had reviewed all of the medical records in Plaintiff's claims file and ultimately found that the medical evidence did not support a condition or combination of conditions that would have precluded Plaintiff from performing: (1) her occupational demands continuously through the elimination period; and (2) sedentary work after Dr. Ahn's fibromyalgia diagnosis. (AR 1218). Before Unum made its final decision on Plaintiff's appeal, however, Unum gave Plaintiff the opportunity to review the information it obtained during its review and respond to the same and/or provide supplemental evidence. (AR 1223).

### 4. Plaintiff's Supplementation of the Appeal Record

On April 15, 2021, Plaintiff responded to Unum's March 10, 2021 letter, challenging Unum's denial decision. Specifically, Plaintiff advanced several counterarguments, and supplemented the record by attaching a declaration from her treating physician, Dr. April, a physician with a specialty in physical medicine and rehabilitation, and a declaration that she authored, dated April 15, 2021. (AR 1249-59). According to Plaintiff, Unum's denial of her appeal was improper because it was largely predicated on the opinions of Dr. Norris. Specifically: (1) Dr. Norris is not a rheumatologist, pain management specialist, or fibromyalgia expert, and therefore lacks the relevant expertise to properly evaluate fibromyalgia and symptoms related thereto; (2) it is irrelevant to assessing Plaintiff's fibromyalgia that Dr. Ahn's August 2019 joint examination and knee and foot x-ray imaging findings did not show inflammatory arthritis; (3) that Dr. Norris

failed to consider that Plaintiff only scheduled her rheumatologist appointments on days when her pain was manageable when he opined that Plaintiff's reports of joint pain were inconsistent with Dr. Ahn's August 2019 findings; (4) Dr. Norris improperly considered Plaintiff's positive Carnett's sign[4] to determine the source of her pain; (5) Dr. Norris inappropriately suggested that Plaintiff's reports of pain and fatigue to Drs. Ahn and York-Jordan were not credible; (6) Dr. Norris's conclusions that Plaintiff's treatment "de-escalated" and was inconsistent with "a degree of functional compromise" that would prevent her from performing her job failed to consider that the COVID-19 pandemic caused Plaintiff to experience a gap in her treatment; (7) that Dr. Norris failed to consider that Plaintiff's treating physicians did not recommend a referral or sleep study to evaluate her chronic fatigue; and (8) that is was improper to conclude Plaintiff's abdominal pain was a pre-existing condition given that Dr. Norris and Ms. Purtell could not determine whether Plaintiff's abdominal pain as of the date of disability was the same as her reported abdominal pain during the look-back period. (AR 1249-53).

In addition, in her declaration, Plaintiff described: (a) how she scheduled her all medical appointments on days where she got at least one full day of rest and felt well enough to avoid being bedridden; (b) that she does not shower, cook, clean, perform household chores, or drive more than 5 minutes when she experiences chronic fatigue and abdominal and joint pain; (c) that no physician she saw between July 2019 and May 2020 recommended a sleep study; (d) that COVID-19 caused the gap in her treatment and delayed her fibromyalgia diagnosis; (e) an overnight oximetry test at the Mayo Clinic to evaluate her fatigue revealed normal findings; and (f) that her joint pain worsened as she "tapered off of" Prednisone. (AR 1258-59).

---

[4] When assessing abdominal pain, a positive Carnett's sign suggests abdominal wall pain whereas a negative Carnett's sign suggests visceral pain.

5.  *Denial of Appeal*

On April 22, 2021, after reviewing Plaintiff's supplementation of the record, Unum upheld

its decision that Plaintiff was not disabled under the Plan. (AR 1269-80). In its April 2021 denial

letter, Unum concluded that:

> We determined [Plaintiff] is not disabled from performing her
> regular occupation from July 18, 2019 and through the 180-day
> elimination period ending January 13, 2020 and beyond. The
> records do not support that her medical conditions when considered
> individually and collectively rise to a severity to preclude function
> in her occupational demands. She is not disabled as defined by the
> [Plan] to be eligible for benefits.
>
> Our appeal review concluded it is unclear if the nature of
> [Plaintiff's] reported abdominal pain as of the claimed date of
> disability was the same as her reported abdominal pain treated
> during the pre-existing condition look back period. We are not
> asserting the pre-existing condition exclusion as a basis of this
> appeal decision at this time.
>
> We reserve our right to fully evaluate the pre-existing nature of
> [Plaintiff's] claimed disability and assert the pre-existing condition
> provision of the [Plan]….

(AR 1270-71).

In issuing its denial letter, Unum explained the bases for its decision, and responded to the

challenges Plaintiff made, as set forth in the nine subsections below. (AR 1269-77).

a.  <u>Vocational Review of Plaintiff's Occupational Duties</u>

Unum obtained a second vocational review by Ms. Marsiano to address Plaintiff's assertion

that its initial vocational review did not consider how her chronic fatigue and abdominal and joint

pain prevented her performing the requisite physical and mental/cognitive demands of her work.

Specifically, that Plaintiff alleged that she had the following restrictions and limitations: (1)

inability to sit or stand for prolonged periods of time during the 12 hour workday; (2) 23-minute

continuous typing tolerance; (3) and debilitating brain fog. (AR 1271). Considering these

19

restrictions and limitations, Marsiano conducted a vocational review and determined that reasonable accommodations were available such that the information provided in Plaintiff's appeal did not alter Unum's initial vocational review. For example, Ms. Marsiano opined: (1) if sit/stand equipment were installed at her workstation, she could change positions during the workday; (2) Plaintiff's 23-minute typing tolerance would not prevent her from performing occasional keyboard use given that speech recognition software is available in the legal profession; and (3) Plaintiff would be able to take frequent breaks to as recommended by the U.S. Occupational Safety and Health Administration ("OSHA"), the National Institute for Occupational Safety and Health ("NIOSH"), and the Centers for Disease Control ("CDC"). (*Id.*). Unum found that "[w]hile attorneys work more than 40 hours per week, they do not always work 12 hours per day[,]" and "[s]itting would be required over two-thirds of the workday." (*Id.*). Relying primarily on Ms. Marsiano's vocational review, Unum concluded that Plaintiff's restrictions and limitations did not change her ability to perform the material and substantial duties of her regular occupation as an attorney. (AR 1271-72).

b.   Gastroenterology Evaluations by Drs. Alex, Malhotra, and Chedid

To determine whether Plaintiff's July 2019 symptoms of fatigue and abdominal and joint pain were the same as her symptoms during the look-back period, Unum analyzed Plaintiff's medical records that reflected that she was initially unable to work due to her Crohn's disease diagnosis as well as gastroenterology evaluations from 2015, 2018, 2019 that indicated that Plaintiff did not have Crohn's disease. (AR 1272). Considering July 2019 diagnostic evaluations by Drs. Alex, Malhotra, and Chedid, Unum noted that Plaintiff's gastroenterologists "ruled out significant or impairing underlying gastroenterology pathology as of July 2019 and ongoing." (*Id.*). While Unum acknowledged the "significant similarities in the type of abdominal pain, with

increased severity around July 2019," it ultimately concluded that Plaintiff's examinations "did not reflect impairment from performing the physical demands of her occupation." (*Id.*).

Regarding Plaintiff's May 2020 fibromyalgia diagnosis, Unum noted that Plaintiff's abdominal pain was consistent with a myofascial cause rather than a gastrointestinal cause. (*Id.*). In other words, Unum determined that Plaintiff's May 2020 records from medical records support Drs. Arment's and Wight's conclusions that Plaintiff's abdominal pain was caused by fibromyalgia, not Crohn's disease. (*Id.*). In addition, Unum noted that Plaintiff's November 2019 Mayo Clinic records reflected that Plaintiff responded well to a trigger point injection, meaning that her abdominal pain was consistent with a myofascial/somatic causes such as fibromyalgia. (*Id.*). After considering all of Plaintiff's gastroenterology examinations and colonoscopies during the elimination period, Unum concluded that Plaintiff's medical records "d[id]not indicate her abdominal symptoms preclude sedentary level activity consistent with her occupational demands." (AR 1272-73).

### c.   Rheumatology Evaluations by Drs. Ahn and Arment

Unum discussed Plaintiff's joint pain reported in June 2019, which involved her knees and ankles. (AR 1273). Regarding Dr. Ahn's August 2019 medical records, Unum noted that Plaintiff reported to Dr. Ahn that her joint pain registered at a level of 8 out of 10. (*Id.*). Unum noted that Dr. Ahn examined Plaintiff but did not state that Plaintiff was in acute distress, nor did she state that Plaintiff had inflammatory arthritis. (*Id.*). In addition, Unum referenced Dr. Ahn's examination of Plaintiff and her diagnostic findings: (a) Plaintiff's joint examination was unremarkable for "synovitis," tenderness, or reduced range of motion; (b) Plaintiff's knee and foot x-rays were also unremarkable; (c) Plaintiff's gait remained normal; and (d) a physical

examination of Plaintiff did not reveal evidence of pain-limited weakness or reduced range of motion. (AR 1273-74).

Next, Unum referenced a May 2020 Mayo Clinic rheumatology evaluation by Dr. Arment, which led her to ultimate fibromyalgia diagnosis. (AR 1273). Unum did not reject Dr. Arment's determination that Plaintiff met the criteria for fibromyalgia and chronic fatigue syndrome, but stated that Plaintiff's diagnosis occurred after the elimination period. (*Id.*). Nonetheless, Unum considered the records and found that: (1) unremarkable musculoskeletal findings from Plaintiff's nuclear medicine joint scan and MRI also ruled out inflammatory arthritis; and (2)  Dr. Arment also did not state that Plaintiff was in acute distress. (*Id.*). Thus, Unum determined that Plaintiff's reports of pain at a level of 8 out of 10 were inconsistent with Dr. Arment's medical records. (*Id.*). Ultimately, Unum concluded that, [a]lthough [Plaintiff] may have fibromyalgia and a degree of pain, the examinations do not reflect a severity of myofascial impairment precluding function in her occupational demands." (*Id.*).

### d.   Evaluations by Dr. Miller and Dr. Wight

Unum determined that "the disability evaluation performed [by Dr. Miller]. . . on August 4, 2020 does not provide relevant information regarding [Plaintiff]'s functional status during the elimination period, which extended from July 18, 2019 through January 13, 2020." (AR 1274). Unum further noted that the evaluation supports its finding that Plaintiff had the capacity to perform sedentary work. (*Id.*).   Finally, Unum determined that Dr. Miller's opinion—that Plaintiff's ability to push or pull was limited by her upper extremities—was not supported by the examinations performed by Plaintiff's rheumatologists and gastroenterologists during the elimination period. (*Id.*).

Unum also did not consider Dr. Wight's opinion about Plaintiff's condition and functional capacity because Dr. Wight did not evaluate Plaintiff during the elimination period. (AR 1275). Comparing Plaintiff's reports of fatigue in her declaration with Dr. Wight's records, Unum stated that Dr. Wight's evaluations did not describe Plaintiff's appearance as fatigued. (AR 1274). Nor did Dr. Wight's records include a referral for neuropsychological testing, which Unum explained "would be expected if there were significant clinical or functional concerns related to cognitive dysfunction." (*Id.*).

Thus, Unum ultimately concluded that Plaintiff could perform the physical and mental/cognitive demands of her occupation as an attorney. (*Id.*).

e.  <u>Physician Questionnaire Completed by Dr. York-Jordan</u>

Unum considered Dr. York-Jordan's opinion that Plaintiff's abdominal and joint pain, nausea, fatigue, and brain fog precluded her from performing her duties as a lawyer. (AR 1275). However, Unum concluded that "this opinion is inconsistent with the clinical evidence contained in multiple specialty evaluations throughout the elimination period and beyond" because: (1) Plaintiff's reports of joint and abdominal pain were inconsistent with medical records from Drs. Ahn and Arment; (2) Plaintiff's medical records did not describe her appearance as fatigued; and (3) Plaintiff was not referred for formal neuropsychological testing. (AR 1274-75).

f.  <u>Dr. April's Declaration</u>

Unum noted Dr. April's opinion that healthcare providers without a specialty in fibromyalgia have difficulty evaluating patients' symptoms. (AR 1275). Unum also acknowledged that Dr. April's declaration provided general information about fibromyalgia and Plaintiff's symptoms. (*Id.*). However, Unum stated that it declined to consider Dr. April's opinion because

he neither treated Plaintiff during the elimination period nor offered clinical evidence of Plaintiff's functional capacity during the elimination period. (*Id.*).

        g.   <u>Unum's Medical Reviewers</u>

Unum obtained clinical reviews from Unum employees, Ms. Purtell and Dr. Norris. (AR1003-08, 1209-20). Ms. Purtell and Dr. Norris based their conclusions on their review of all of the records in Plaintiff's claims file.

Ms. Purtell and Dr. Norris determined that it was unclear whether Plaintiff's abdominal pain in July 2019 was the same as the abdominal pain that she complained of during the pre-existing condition look-back period. (AR 1272).

Dr. Norris determined that Plaintiff's complaints of severe and debilitating joint pain were inconsistent with the generally unremarkable musculoskeletal findings made by Plaintiff's gastroenterologists and rheumatologists in November 2019 and May 2020. (AR 1273). In addition, Dr. Norris opined that:

> An individual experiencing pain levels of 8 out of 10 would be expected to show some signs of distress that would be documented by an examining physician. While [Plaintiff] may perceive her pain to be that severe, her examination findings do not reflect that her pain restricts her ability to function to a significant degree that it would preclude her from performing her occupational demands.
>
>           …
>
> Her examination findings were benign, and contrasted with the severely limiting degree of pain she reported. [Drs. Ahn and Arment] ruled out significant active conditions such as inflammatory arthritis or osteoarthritis that would be consistent with the severity of joint symptoms [Plaintiff] reported.

(*Id.*). Dr Norris based his conclusions on a review of Plaintiff's reports of pain, examination and diagnostic findings, the frequency of Plaintiff's treatment, and her ability to perform household tasks. (*Id.*). Next, Dr. Norris concluded that Plaintiff's treatment "deescalated"(sic) because she

stopped seeing Dr. Rai in January 2020, discontinued her Prednisone use in February 2020, and only saw her primary care physician as of February 2020. (AR 1274). Dr. Norris also determined that Plaintiff's 2019 rheumatologist and gastroenterology records "did not support restrictions or limitations from July 18, 2019 through January 13, 2020 and beyond that would preclude [Plaintiff] from performing the physical and cognitive demands associated with her occupation." (*Id.*). Dr. Norris arrived at this conclusion after considering that Dr. Ahn's August 29, 2019 rheumatology evaluation "did not provide clinical evidence of impaired function due to Plaintiff's reports of joint pain." (*Id.*). Finally, Dr. Norris opined that there was a lack of clinical evidence to support impairing levels of fatigue and abdominal and joint pain that Plaintiff claimed she experienced. (AR 1276).

### h.  Plaintiff's Supplemental Declaration

Unum discussed Plaintiff's declaration, first noting that Plaintiff stated that the COVID-19 pandemic prevented her from seeking regular treatment for her conditions during from March 2020 to May 2020. (AR 1274). Upon reviewing Plaintiff's medical records, Unum determined that Plaintiff's treatments "deescalated" prior to the U.S. Government instituting COVID-19 restrictions in February 2020. (*Id.*). Unum also evaluated Plaintiff's statement that she had experienced chronic pain but scheduled her medical appointments on days when she felt her "best." (AR 1273). According to Unum, this "does not explain how an individual reporting pain at a level of 8 out of 10 can also be in no acute distress." (*Id.*). Unum further noted that the normal results from Plaintiff's overnight oximetry test in May 2020 did not alter its conclusion that none of Plaintiff's medical records supported her claims of levels of fatigue that impeded her ability to perform the demands of her work. (AR 1276).

i.   <u>Plaintiff's Challenges Advanced in Her Supplemental Submission</u>

Unum also responded to the challenges raised by Plaintiff in her supplemental submission. (AR 1275-77). First, Unum explained that it did not deny her claim at that time based on a pre-existing condition. (AR 1275). Second, Unum stated that "there is no contraindication to [Plaintiff] performing the demands of her occupation despite her diagnosis of fibromyalgia." (*Id.*). Third, Unum considered Plaintiff's reports of significant and impairing symptoms but ultimately determined that Plaintiff's symptoms would not preclude her from performing her occupation because there was no documented clinical evidence of her impaired functioning. (*Id.*). Fourth, Dr. Norris: (a) was qualified to interpret Plaintiff's medical data; (b) considered all of Plaintiff's reported symptoms; and (c) did not reject Plaintiff's May 2020 fibromyalgia diagnosis and symptoms when it denied her disability claim. (AR 1276). Fifth, Unum reached its disability decision by relying on records from multiple specialists who treated Plaintiff during July 2019 and January 2020. (*Id.*). Sixth, regarding Dr. Norris's statement about Plaintiff's positive Carnett's sign on May 13, 2020, Unum explained that "Dr. Norris considered [Plaintiff's] functional ability based on the totality of information within all clinical notes in the file, not based on one examination finding." (*Id.*). Finally, Unum explained that Dr. Norris found Plaintiff's subjective reports of pain and fatigue to be credible. However, Dr. Norris concluded the severity of Plaintiff's complaints was inconsistent with the clinical evidence. (AR 1277).

### E. Procedural Background

Having exhausted her administrative remedies, on June 30, 2021, the Plaintiff filed her Complaint in this Court seeking judicial review of Unum's denial of her disability claim. (ECF No. 1). In the Complaint, Plaintiff asserts that Unum violated ERISA first by erroneously finding

that she had a pre-existing condition that precluded coverage, and then later by changing its position and finding that she did not suffer from a disability. (*Id.*).[5]

On January 31, 2022, the parties filed a Joint Status Report, in which the parties informed the Court that they disputed the "standard of review" that applies to the instant case—more specifically, to forthcoming dispositive motions—and whether Plaintiff should be permitted to pursue discovery. (ECF No. 23). On April 18, 2022, the Court issued a Memorandum Opinion and Order in which it required additional briefing related to: (1) the applicable standard of review; (2) whether District of Columbia law controls; and (3) whether extra-record discovery is necessary. (ECF No. 24). On September 19, 2022, after full briefing, the Court issued a Memorandum Opinion in which it found the following: (1) District of Columbia law applies to the instant dispute; (2) abuse of discretion is the standard of review applicable to the parties' forthcoming dispositive motion(s); and (3) Plaintiff is entitled to seek extra-record discovery related to Unum's conflict of interest in adjudicating the Plaintiff's disability benefits application. (ECF No. 32).

On October 24, 2022, the Court entered a briefing schedule related to the parties' proposed motion for summary judgment and motion for judgment on the administrative record. (ECF No. 36). Thereafter, Unum filed the Motion, and Plaintiff filed the Counter Motion. (ECF Nos. 55, 56, 57). Subsequently, Unum filed a Reply in support of the Motion, which also served as an Opposition to the Counter Motion. (ECF No. 62) ("Reply"). Finally, Plaintiff filed a Reply in support of the Counter Motion. (ECF No. 65) ("Counter Motion Reply").

---

[5] The Complaint originally asserted claims against the Defendant and Hogan Lovells, but the parties stipulated to the dismissal of the law firm. (*See* ECF Nos. 10, 12). Thus, Plaintiff's action is only against Defendant Unum.

## II.   STANDARDS OF REVIEW

### A.  Federal Rule of Civil Procedure 52 vs. Federal Rule of Civil Procedure 56

As a preliminary matter, the parties dispute whether the instant matter should be resolved pursuant to Fed. R. Civ. P. ("Rule") 52 or Rule 56, i.e., whether the Court should, in effect, conduct a bench trial on the papers or perform a summary judgment review of the administrator's decision. Plaintiff maintains that a Rule 52 "bench trial on the papers" is the appropriate standard because genuine disputes of fact exist that the Court must resolve when deciding whether Unum abused its discretion in denying Plaintiff's claim. In response, Unum counters that because this is an ERISA case and the Court is reviewing Unum's action under an abuse of discretion standard, Rule 52 is inappropriate. Unum also asserts that the usual summary judgment framework is inapplicable.

Although, as the parties recognize, "case law is unsettled" as to whether Rule 52 or Rule 56 is the appropriate Rule when reviewing an administrator's decision for abuse of discretion, the Court finds that the greater weight of authority and sound reason favor applying Rule 56.

Traditionally, a motion for summary judgment shall be granted only if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a), and a movant satisfies its burden by the submission of, e.g., pleadings, depositions, answers to interrogatories, admissions, and affidavits. *Celotex Corp.,* 477 U.S. at 323; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984); *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987) (internal citation omitted). However, in an ERISA case, "'[w]hen the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit

to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, *do not apply.*" *James v. Int'l Painters & Allied Trades Indus. Pension Plan*, 844 F. Supp. 2d 131, 141 (D.D.C. 2012) (emphasis added), *aff'd*, 738 F.3d 282 (D.C. Cir. 2013) (citing *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir.1999)), *overruled on other grounds in Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 966–69 (9th Cir.2006) (en banc)); *see also Chipman v. Cigna Behav. Health, Inc.*, 480 F. Supp. 3d 174, 180 (D.D.C. 2020) (same), *aff'd*, Civ. No. 20-7094, 2021 WL 5537709 (D.C. Cir. Nov. 23, 2021).[6] Therefore, to the extent that the parties' summary judgment motions concern a defendant's denial of benefits to a plaintiff, they are "procedural vehicles" through which a court determines whether a defendant acted "reasonably," i.e., whether the defendant's decision(s) are supported by substantial evidence. *James*, 844 F. Supp. at 141.

Indeed, several courts in the District of Columbia have applied Rule 56 when resolving cases analogous to the instant dispute. *See Pettaway v. Tchrs. Ins. & Annuity Ass'n of Am.*, 699 F. Supp. 2d 185, 198 (D.D.C. 2010), *aff'd*, 644 F.3d 427 (D.C. Cir. 2011) (applying Rule 56 in case where court reviewed an administrator's benefits determination using an abuse of discretion standard); *Marcin v. Reliance Standard Life Ins. Co.,* 138 F. Supp. 3d 14, 18 (D.D.C. 2015) (same), *aff'd,* 861 F.3d 254 (D.C. Cir. 2017); *Foster v. Sedgwick Claims Mgmt. Servs., Inc.*, 125 F. Supp. 3d 200, 207 (D.D.C. 2015), *aff'd*, 842 F.3d 721 (D.C. Cir. 2016)).[7]

---

[6] The Court has already held that District of Columbia law applies to this case. See ECF No. 32. The Court has also found relevant law in this and other Circuits on this issue. *See Keith v. Fed. Express Corp. Long Term Disability Plan*, Civ. No. 09-389, 2010 WL 1524373, at *3 n. 4 (W.D. Va. Apr. 15, 2010) (same); *accord Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir. 2005) ("In an ERISA case where review is based only on the administrative record before the plan administrator and is an ultimate conclusion as to disability to be drawn from the facts, summary judgment is simply a vehicle for deciding the issue. This means the non-moving party is not entitled to the usual inferences in its favor") (internal citations omitted).

[7] See also *Frank v. Liberty Life Assurance Co. of Bos.*, Civ. No. GJH-15-124, 2017 WL 2172320, at *2 (D. Md. Mar. 1, 2017) (citing *Tobey v. Keiter, Stephens, Hurst, Gary & Shreaves*, Civ. No. 13-315, 2014 WL 61325, at *3 (E.D. Va. Jan. 7, 2014), *aff'd*, 585 F. App'x 837 (4th Cir. 2014) ("Where the plan administrator resolved a factual dispute, *de novo* consideration of the same disputed issue of fact—for example, by way of a bench trial-would be inappropriate

Accordingly, the Court will review the case pursuant to Rule 56 and analyze whether Unum abused its discretion when denying Plaintiff's benefits application.

**B**. **Cross Motions for Summary Judgment**

Because the Court has decided that Rule 56 provides the appropriate standard of review, the parties' pleadings will be construed as cross motions for summary judgment. Accordingly, the Court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Arabaitzis v. Unum Life Ins. Co. of Am.*, Civ. No. 16-1273-TNM/DAR, 2018 WL 4610893, at *4 (D.D.C. Sept. 11, 2018), *report and recommendation adopted,* Civ. No. 16-01273-TNM, 2018 WL 6530581 (D.D.C. Sept. 26, 2018) (internal quotation marks omitted) (quoting *Lewis v. Government of District of Columbia*, 282 F. Supp. 3d 169, 177 (D.D.C. 2017)).

**C. Judicial Review of Unum's Decision: Reasonableness Analysis**

Because this Court has already held that the Plan at issue gives Unum the discretionary authority to construe the Plan and to determine eligibility for benefits thereunder, the Court must employ a more deferential standard of review, which involves assessing whether Unum abused its discretion. *Block v. Pitney Bowes Inc.*, 952 F.2d 1450, 1453 (D.C. Cir. 1992).

Although cross motions for summary judgment are before the Court, the single question presented is whether the Plan Administrator abused its discretion in denying Plaintiff benefits under the Plan. *See Marcin*, *supra*, 138 F. Supp. 3d at 22 ("the 'essential inquiry' is whether the administrator 'reasonably construe[d] and appl[ied]' the plan") (quoting *Block v. Pitney Bowes Inc.,* 952 F.2d 1450, 1454 (D.C.Cir.1992)).; *see also Jacobs v. Reliance Standard Life Ins. Co.*,

---

and in derogation of the required deference")); *see also cf. Evans v. Eaton Corp. Long Term Disability Plan,* 514 F.3d 315, 323 (4th Cir.2008) ("The language of discretion in an ERISA plan is a message to courts, counseling not judicial abdication, to be sure, but a healthy measure of judicial restraint").

Civ. No. 21-323-TSC, 2023 WL 2708581, at *12 (D.D.C. Mar. 30, 2023) (finding that "there is but a single, overarching question to be decided: Whether [defendant] properly denied [plaintiff's] claim").

In determining whether the plan administrator abused its discretion in construing and applying the plan, a court reviews the administrator's decision to determine whether, in light of the administrative record, it is "reasonable." *Buford v. UNUM Life Ins. Co. of Am.*, 290 F. Supp. 2d 92, 99 (D.D.C. 2003) ("In reviewing UNUM's decision to terminate plaintiff's benefits under a deferential standard, the Court considers whether that decision was reasonable") (citing *Block, supra*, 952 F.2d at 1453–54). Put another way, the "court must not overturn a decision found to be reasonable, even if an alternative decision also could have been considered reasonable." *Block, supra*, 952 F.2d at 1452 (internal quotation marks omitted); *see also Mobley v. Cont'l Cas. Co.*, 405 F.Supp. 2d 42, 48 (D.D.C. 2005) (finding that a plan administrator may reach a conclusion that is technically incorrect so long as it is reasonably supported by the administrative record). A decision is "reasonable" so long as it "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Buford, supra,* 290 F. Supp. 2d at 100.[8]

In addition, "courts must account for the inherent 'conflict of interest' that arises when, as here, a plan administrator 'both evaluates claims for benefits and pays benefits claims.'" *Marcin, supra*, 138 F. Supp. 3d at 22. A court evaluates a conflict of interest as one factor when deciding whether a plan administrator has abused its discretion. *Pettaway, supra,* 699 F. Supp. 2d at 206; *see also Brown v. Hartford Life and Accident Ins. Co.*, 12 F. Supp. 3d 88, 95 (D.D.C. 2014) (finding "an alleged conflict of interest is a factor to be considered in the reasonableness inquiry,

---

[8] Although the Court has already held that District of Columbia law applies to this case, the Court has found caselaw within the Fourth Circuit, where courts analyze the administrative record under the reasonableness standard set forth in *Buford. See e.g.*, *Tobey v. Keiter, Stephens, Hurst, Gary & Shreaves*, Civ. No. 13-315, 2014 WL 61325, at *3 (E.D. Va. Jan. 7, 2014); *see also Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 323 (4th Cir.2008).

but it does not change the standard of review or any other burden-of-proof, procedural, or evidentiary rule"); *see also Marcin v. Reliance Stand. Life Ins. Co.*, 861 F.3d 254, 263 (D.C. Cir. 2017)("*Marcin D.C. Cir.*") ("While the factors to be examined in any ERISA case will vary based on the factual circumstances, … the conflict of interest factor must be evaluated").

### D.  Evaluation of  Treating Physicians' Opinions

In evaluating ERISA claims, a plan administrator is not required to give increased weight to the opinion of a claimant's treating physician. *See Black & Decker Disability Plan v. Nord.*, 538 U.S. 822, 834, 123 S.Ct, 1965 (2003); *Marcin D.C. Cir.,* 861 F.3d at 263; *see also Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation") (quoting *Black & Decker Disability Plan*, *supra*, 538 U.S. at 822) (internal quotation marks omitted).

## III.   DISCUSSION

### A.  Parties' Arguments

Plaintiff argues that Unum abused its discretion by denying Plaintiff's long-term disability benefits claim. (Counter Motion, pp. 16-30). In general, Plaintiff contends that: (1) Drs. Norris, Nosaka, and Broomes ("Reviewing Physicians") have a significant financial relationship with Unum and routinely recommend against awarding benefits to claimants, which renders their opinions biased and unreliable; (2) Unum's Reviewing Physicians misapplied the criteria for fibromyalgia and ignored Plaintiff's subjective symptoms of pain and fatigue; (3) Dr. Norris mischaracterized Plaintiff's course of treatment; (4) Unum failed to consider Plaintiff's restrictions and limitations caused by her fatigue and abdominal and joint pain when it found that she could

perform sedentary work; (5) Unum improperly concluded that Plaintiff's symptoms were pre-existing conditions; and (6) Unum's decision-making process was not reasoned and principled. (*Id.*).

Unum avers that it did not abuse its discretion because Plaintiff received a fair review of her long-term disability claim. (Reply, pp.4-14). More specifically, Unum contends that: (1) its record review was reliable and unbiased; (2) it afforded the appropriate weight to both the objective and subjective medical evidence of Plaintiff's conditions and symptoms; (3) it applied the correct criteria when assessing Plaintiff's fibromyalgia diagnosis; (4) it considered all relevant medical evidence; (5) Ms. Marsiano's vocational analysis adequately considered the relevant aspects of Plaintiff's work as an attorney; and (6) its review process was deliberate and principled. (*Id.*).

## B. Analysis: Unum's Reviewing Physicians

### 1. *Reliability of Unum's Reviewing Physicians*

Plaintiff first argues that Unum's denial was an abuse of discretion because it had a significant financial relationship with its Reviewing Physicians, all of whom have a track record of finding a claimant is not disabled. (Cross Motion, pp. 17-18). Unum counters that none of its Reviewing Physicians exhibited any bias or overlooked any evidence in their review of Plaintiff's disability claim. (Reply, p. 5-7). Relying on *Marcin D.C. Cir*, *supra*, and *Everette v. Liberty Life Assur. Co. of Boston*, Civ. No. TDC-16-1248, 2017 WL 2829673, at *11 (D. Md. June 29, 2017), Unum also asserts that Plaintiff failed to identify evidence to rebut the presumption that an independent physician is not biased. (*Id.*, p. 6-7). To support its argument that the denial rates of its reviewing physicians does not evidence their bias, Unum relies on the following caselaw: *DeMarco v. Life Ins. Co. of N. Am.,* No. CV-19-02385-PHX-DWL, 2020 WL 906461, at *5 (D. Ariz. Feb. 25, 2020), *Nolan v. Heald Coll.,* 745 F. Supp. 2d 916, 923 (N.D. Cal. 2010), *Rickaby v.*

*Hartford Life & Acc. Ins. Co.*, Civ. No. 15-00813-WYD-NYW, 2016 WL 1597589, at *3 (D. Colo. Apr. 21, 2016), and *Whalen v. Stand. Ins. Co.*, Civ. No. SACV 08-0878 DOC, 2010 WL 346715 (C.D. Cal. Jan. 14, 2010).

The Court finds Unum's reliance on *Everette* is misplaced. Nonetheless, the Court ultimately finds *Nolan* particularly instructive.

As a preliminary matter, the Court understands that because Unum both evaluates claims and pay claims for disability under the Plan, it must consider whether a conflict of interest exists such that Unum abused its discretion in denying Plaintiff's claim. *See Marcin, supra*, 138 F. Supp. 3d at 22. However, the Court also understands that "[t]he conflict of interest factor 'should prove more important (perhaps of great importance) [only] where circumstances suggest a higher likelihood that it affected the benefits decision [and] less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy.''' *Id.* (quoting *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117, 128 S.Ct. 2343, 2352 (2008)).

In *Nolan*, the plan administrator relied on the opinions of two independent physicians who did not physically examine Nolan to support its decision to terminate the plaintiff's disability benefits. To demonstrate that the independent review was biased, Nolan presented evidence of a number of claims where: (1) the plan administrator denied disability benefits; (2) the plan administrator hired a reviewing physician from an independent medical review company; and (3) the plan administrator terminated benefits after relying upon an independent physician assigned by the independent medical review company. The court held that statistics of denial rates alone were not probative "because they do not on their own support an inference that a similar pool of claims reviewed by a different set of physicians would have had a lower denial rate." 745 F. Supp. 2d at 923 (citing to *Dilley v. Metropolitan Life Ins. Co.*, 256 F.R.D. 643 (N.D.Cal.2009) ("Details

of the number of claims denied based on a medical records review by [the vendor] would be meaningless unless a finding could be made that [plan administrator] had wrongly denied those claims")). In the instant case, while Plaintiff cites to statistics of the Reviewing Physicians' denials, she does not provide additional evidence that Unum's Reviewing Physicians wrongly denied those claims. Thus, the statistics are not probative of any bias. *See Nolan*, *supra*, 745 F. Supp. 2d at 923.

In *Everette*, the plan administrator often hired independent physicians to review its disability claims. After reviewing her medical records, the plan administrator's independent physicians opined that Everette was not eligible for long-term disability benefits. In her appeal, Everette argued that the independent physicians were biased because "they [we]re regularly retained and paid by plan administrators." 2017 WL 2829673, at *11. The *Everette* court held that "[the plan administrator]'s retention of independent physicians to review the medical records and assess [plaintiff]'s ability to work helps to mitigate its 'potential conflict of interest as administrator and insurer,' because the independent physician is 'presumably free of defendant's conflict of interest.'" 2017 WL 2829673, at *1-11 (quoting *DiCamillo v. Liberty Life Assur. Co.*, 287 F. Supp. 2d 616, 624 (D. Md. 2003)).

This case is distinguishable from *Everette*, *supra*, as Plaintiff cites to evidence that she believes to demonstrate that Unum's Reviewing Physicians were biased and unreliable. Specifically, Plaintiff cites to evidence that Unum paid Dr. Broomes's employer $281,400 for medical reviews in 2019-2020, of which $77,050 went to Dr. Broomes. According to Plaintiff, Dr. Broomes has never found a claimant to be functionally impaired in any of the cases referred to him by Unum. Plaintiff also relies on statistical evidence that Drs. Nosaka and Norris, found claimants were functionally impaired in 4.5% of all the cases they reviewed between 2019-2021, which she believes evidences their bias against claimants. (*See* Cross Motion, p. 17).

Plaintiff relies on *Marcin D.C. Cir., supra*, 861 F.3d 254, for the proposition that the independent medical reviewer must be reliable. Plaintiff also relies on *McGahey v. Harvard Univ. Flexible Benefits Plan*, 685 F. Supp. 2d 168, 180 (D. Mass. 2009); and *Caplan v. CNA Fin. Corp.*, 544 F. Supp. 2d 984, 990, 992 (N.D. Cal. 2008). Having reviewed the administrative record, the Court finds that Plaintiff's reliance on *McGahey* and *Caplan* is misplaced.

In *McGahey*, the plaintiff's claim for disabilities was reviewed by fourteen physicians. The plan administrator employed the only three physicians that did not determine the plaintiff was disabled. The plaintiff cited to evidence that one of the plan administrator's reviewing physicians denied every claim he reviewed, and another reviewing physician denied eighty percent of the claims they reviewed. The court found that "[t]here is nothing necessarily sinister afoot[]" given that the plan administrator's physicians were the only physicians that did not find the plaintiff was disabled. However, the court found the plan administrator's denial was arbitrary and capricious because its reviewing physicians refused to consider the plaintiff's social security disability insurance and workers' compensation awards and glossed over the opinions of the plaintiff's treating physicians. 685 F. Supp. 2d 168-1180. In this case, however, as set forth below, the Reviewing Physicians analyzed the records in Plaintiff's claim file, considering all relevant evidence and provided explicit reasons for its ultimate determination. *See, e.g.*, AR 537-39, 557-562, 564-56, 579-86, 722-63, 777-85.

In *Caplan*, a plan administrator paid a vendor, whose marketing materials appeared to advertise services that would support "a parsimonious approach to administrating claims[,]" more than thirteen million dollars to perform physician reviews from 2002-2008. 544 F. Supp. 2d at 992. When the reviewing physician contacted the plaintiff's treating physician to discuss his disability claim, the reviewing physician stated that he believed that "anybody can work in a sedentary

occupation[]" and that "only objective findings are acceptable indications of disability." 544 F. Supp. 2d at 990. The reviewing physician's report reflected these beliefs. Therefore, the court found that it was an abuse of discretion for the plan administrator to give conclusive weight to its reviewing physician's report. 544 F. Supp. 2d 990-93. In the instant case, however, as set forth below, there is no evidence of skewed beliefs that affected the Reviewing Physicians' decisions.

In this case, the administrative record contains ample evidence that Unum's Reviewing Physicians performed multiple rounds of review of Plaintiff's claims file, which is a strong indication that Unum was not biased but, rather, tried to administer the Plan fairly.

First, Unum hired Dr. Shepherd to perform the initial review Plaintiff's entire claims file. (AR 537-39). In her review, Dr. Shepherd examined all materials submitted by Plaintiff, which included: (1) colonoscopy finding of Crohn's disease; (2) follow-up appointments with Dr. Rai, which referenced Plaintiff's treatments by Drs. Alex and Malhotra; (3) attending physician's form noting that Plaintiff suffers from Crohn's disease, abdominal pain, fatigue, nausea, and joint pain; and (4) a February 21, 2019 questionnaire completed by Dr. York-Jordan. (AR 538). After reviewing all records in Plaintiff's file, Dr. Shepherd determined that Plaintiff's Crohn's disease and fatigue were pre-existing conditions. (*Id.*). Despite this finding, Dr. Shepherd nonetheless continued her review to analyze Plaintiff's joint pain (which Dr. York-Jordan had opined was debilitating). (*Id.*). After reviewing all records focusing on Plaintiff's joint pain and considering the occupational demands of an attorney, Dr. Shepherd disagreed with Dr. York-Jordan's opinion. Instead, Dr. Shepherd concluded that Plaintiff was able to perform the occupational demands of her work on a full-time basis during the elimination period. (AR 539). Thus the administrative record supports that Dr. Shepherd engaged in a careful analysis to reach her conclusion. More

important, the Court finds particularly significant the fact that Plaintiff levels no claim of bias against Dr. Shepherd, who is also employed by Unum.

As further evidence of its reasonableness, because Dr. Shepherd disagreed with Dr. York-Jordan's finding, Unum hired a different physician, Dr. Nosaka, to perform a **second** review of Plaintiff's claim file. (AR 557-62). Similar to Dr. Shepherd, Dr. Nosaka carefully reviewed all medical records in Plaintiff's file. (AR 559). In addition, Dr. Nosaka summarized Plaintiff's medical records in chronological order, noting the following: (a) examination and lab findings; (b) prescription and recommended treatment plans; (c) Plaintiff's symptoms and response to medications; and (d) the history of Plaintiff's Crohn's disease. (*Id*.). Dr. Nosaka also opined that Plaintiff's Crohn's disease and fatigue were pre-existing conditions, but continued his review to determine whether Plaintiff's joint pain was debilitating. (*Id.*). Dr. Nosaka noted that Plaintiff's "Crohn's [disease is] being treating with [P]rednisone which has improved the joint pain." Finally, Dr. Nosaka concluded that "given the unremarkable diagnostic and physical exam findings, the conservative treatment plan, and the minimal physical demands of the occupation, … [Plaintiff] was not precluded from performing the full time duties of her occupation." (AR 560).

After Dr. Nosaka disagreed with Plaintiff's treating physician, Unum hired a **different** doctor to perform a **third** review of Plaintiff's claim to determine whether Plaintiff's joint pain was continuously disabling. (AR 554-56). This time, Unum hired Dr. Broomes, a physician not employed by Unum. (*Id.*). Upon reviewing the materials in Plaintiff's file and Dr. Nosaka's report, Dr. Broomes also determined that Plaintiff was not functionally impaired given her unremarkable physical examination and imaging findings. (AR 565). The Court finds that having three different physicians examine Plaintiff's claims was further evidence that Unum acted reasonably.

Even after three Reviewing Physicians found against Plaintiff, on appeal, Unum sought the opinion of a **fourth** and **different** physician, Dr. Norris, to perform a full review of Plaintiff's file. (AR 1003-08, 1209-20). Like the other Reviewing Physicians, Dr. Norris began his review by examining all clinical records contained in Plaintiff's file, which included the medical records from June 2015 to May 2020. (*Id.*). Dr. Norris chronologically summarized each medical appointment, as he tracked the severity of Plaintiff's joint pain, fatigue, and abdominal pain. (*Id.*). In addition, Dr. Norris provided a rationale for why he disagreed with Dr. York-Jordan's opinion that Plaintiff's symptoms were disabling. Specifically, Dr. Norris found that "examinations remained generally unremarkable without evidence of pain-limited weakness or reduced [range of motion], gait remined normal, neurological deficits were not described." (AR 1217).

Thus, having reviewed the administrative record, the Court finds that Unum's four different doctors, one of whom Plaintiff does not level a claim of bias against, reached the same conclusion upon performing the same steps in their review of Plaintiff's file. The Court also finds that the Reviewing Physicians clearly stated their reasons for their opinions *See Buford*, *supra*, 290 F. Supp. 2d at 102 ("For its decision to be reasonable, UNUM need only show that it based its determination on substantial evidence"). In light of the foregoing, the Court finds that it was reasonable for Unum to rely on the opinions of its Reviewing Physicians, and that Plaintiff's claims of bias are not supported by the evidence. *See Marcin, supra,* 138 F. Supp. 3d at 18 ("whether the insurer's determination was reasonable on this record depends in large measure on what that determination was and the stated reasons behind it") (internal quotations and citation omitted). Put another way, Plaintiff has not offered any evidence that the alleged bias of the Revieing Physicians actually affected the decision to deny her benefits. *Becker v. Weinberg Group, Inc. Pension Trust*, 473 F. Supp. 2d 48, 62 (D.D.C. 2007).

Even though the Court has found that Plaintiff has failed to demonstrate any bias on the part of any of Unum's Reviewing Physicians that influenced their decision-making, immediately below are a few detailed examples of how the Reviewing Physicians' decisions were reasonable and not arbitrary and capricious.

### 2. Evaluation of Fibromyalgia

Plaintiff argues that the Reviewing Physicians improperly evaluated her fibromyalgia based on the absence of objective evidence when fibromyalgia is assessed through physical examinations and subjective complaints. (Cross Motion, pp. 18-20). Specifically, Plaintiff argues that Dr. Norris's opinion is unreliable because he is not a rheumatologist and he failed to consider her physical examination results that confirm her fibromyalgia and symptoms. (*Id.*, p. 19-20). Plaintiff relies on *Marcin*, *supra*, where the court held "a 'reliable' opinion is one that includes an examination of all pertinent evidence." 138 F. Supp. 3d at 28.

Unum contends that its reviewing physicians gave the appropriate weight to all evidence, and that it was free to look beyond Plaintiff's treating physicians to reach its conclusion. (*Id.*, p. 8). (Reply, pp. 8-9). To advance its argument, Unum relies on *Marcin D.C. Cir.*, *supra, Brown v. Hartford Life and Accident Ins. Co.*, 12 F. Supp. 3d 88 (D.D.C. 2014) and *O'Bryan v. Consol Energy, Inc*., 477 Fed. Appx. 306 (6th Cir. 2012). The Court agrees and finds *Marcin D.C. Cir.*, *supra,* and *Brown* instructive.

In *Marcin D.C. Cir.*, the reviewing physician did not examine the plaintiff, but rather reviewed her medical records. Before offering his opinions, the reviewing physician briefly recited the plaintiff's medical records, acknowledging that the plaintiff reported complaints of fatigue. Then, the reviewing physician opined that there was a 90% likelihood that plaintiff's kidney cancer would be cured and that she would not experience complications from her treatment. The court

found that the reviewing physician "in no way explains how his conclusions are rationally related to the medical evidence." Therefore, the court held that the reviewing physician's review was not reliable because he failed to link the plaintiff's medical records to his conclusion. 861 F.3d at 264-65.

In the instant case, there is substantial evidence to support that it was reasonable for Unum to rely on its Reviewing Physicians' opinions, despite none of them being rheumatologists. For instance, in his March 9, 2021 report, Dr. Norris stated that he based his conclusions on the findings from Plaintiff's rheumatologists. (AR 1040). In addition, Dr. Norris agreed with Dr. Chedid's November 2019 finding that Plaintiff's symptoms of fatigue abdominal and joint pain were likely not caused by Crohn's disease and reasonably opined that Plaintiff's abdominal pain supported a myofascial cause, such as fibromyalgia, upon examining Plaintiff's rheumatology records from August 2019 and May 2020. (AR 1038). Moreover, Dr. Norris's failure to discuss Dr. Arment's May 2020 trigger point findings was reasonable given that Dr. Arment examined Plaintiff after the elimination period ended. (*Id.*). However, and perhaps more importantly, Dr. Norris examined November 2019 medical records from Dr. Chedid noting that Plaintiff responded well to trigger point injections during the elimination period. (AR 1037). Finally, Dr. Norris based his opinion of findings from Dr. Arment's physical exam, noting that Plaintiff did not appear in acute distress. (AR 1038). Thus, contrary to Plaintiff's argument, Unum acted reasonably concluding that "[g]iven that the records support a myofascial/somatic cause of [Plaintiff]'s reported symptoms, such as fibromyalgia, work activity within the demands of her occupation would not be contraindicated." (AR 1272). Accordingly, the instant case is readily distinguishable from *Marcin D.C. Cir.* as Dr. Norris's review is supported by substantial evidence in the administrative record.

Next, Plaintiff argues that Dr. Norris's "apparent" view that fibromyalgia is *per se* non-disabling is unreasonable. Unum responds that it was not required to grant her benefits merely because Dr. Arment diagnosed her with fibromyalgia. The Court agrees and finds *Brown* instructive.

In *Brown*, the plaintiff submitted her medical records from two of her treating physicians who reported that she was disabled from fibromyalgia and could not work. The court found that the plan administrator was free to look beyond the plaintiff's treating physicians' reports because the plaintiff's physicians did not include references to any test results, physical assessments, or medical findings to support her fibromyalgia diagnosis. The reviewing physician determined that the plaintiff's condition did not preclude her from working because her sarcoidosis was in remission, her MRI revealed no abnormalities, and video footage showed that plaintiff could perform everyday activities. Weighing the conflicting medical evidence in favor of its reviewing physician, the plan administrator denied plaintiff's disability claim. The court held that "[i]t was perfectly reasonable and permissible for [the plan administrator] to give significant weight to [its reviewing physician]'s opinion, despite the fact that she never personally examined plaintiff." *Brown, supra,* 12 F. Supp. 3d at 97-98.

In this case, it was reasonable for Unum to decline to defer to Dr. York-Jordan's opinion, which was based solely on Plaintiff's subjective complaints. As Dr. Norris's report explained, he determined that Plaintiff's 2019 and 2020 gastroenterologist and rheumatologist records did not reflect that she appeared in acute distress. (AR 1038). Nor did findings from Dr. Ahn's physical examination of Plaintiff reveal evidence of pain-limited weakness or reduced range of motion. (AR 1273-74). Thus, Dr. Norris concluded that the severity of Plaintiff's fatigue and joint pain and abdominal pain, which she reported was at a level of 8 out of 10, were inconsistent with her medical

records from July 2019 to May 2020. In addition, Dr. Ahn's August 2019 records revealed unremarkable musculoskeletal findings, (AR 1037-39). Thus, it was reasonable for Unum to find that Plaintiff's subjective reports of pain were credible, but ultimately gave them less weight because Plaintiff did not appear in acute distress at her medical appointments. (AR 1272-77). In other words, substantial evidence supports Unum's decision to rely upon Dr. Norris's opinion to conclude that Plaintiff's abdominal and joint pain were not severe enough to preclude her from sedentary work. (AR 1277). Accordingly, then, Unum did not abuse its discretion. *See Brown, supra,* 12 F. Supp. 3d at 97-98; *see also Loucka v. Lincoln Nat'l Life Ins. Co.*, 334 F. Supp. 3d 1, 11 (D.D.C. 2018) (citing *Black & Decker Disability Plan*, *supra*, 538 U.S. at 834) (finding "courts [may not] impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation").

### 3. *Plaintiff's Subjective Complaints of Pain*

Plaintiff raises several arguments as it relates to Unum's consideration of her subjective complaints of pain. First, Plaintiff argues that it was unreasonable for Unum to ignore her reports of severe abdominal and joint pain and fatigue that began in July 2019. Second, that the Plan does not require conditions be proven with objective evidence to the extent that Unum discredited Plaintiff's subjective pain on this basis. Third, Unum abused its discretion by crediting the opinions of its reviewing physicians over the opinions of Plaintiff's treating physician. (Cross Motion, pp. 21-23).

Unum contends that there is no evidence of bias, because it considered all pertinent evidence in its review, including irrelevant evidence of Plaintiff's symptoms and conditions treated after her coverage under the Plan had terminated. (Reply, p. 11). The Court agrees with Defendant.

As held previously, a court "must not overturn a decision found to be reasonable, even if an alternative decision also could have been considered reasonable." *Block*, *supra,* 952 F.2d at 1452 (internal quotation marks omitted).

In this case, there is ample evidence that Unum considered Plaintiff's subjective complaints of pain when deciding to deny coverage. For instance, Unum relied upon the opinion of Dr. Norris, who stated that he did not dispute Plaintiff's reports of pain. (AR 1276). Upon reviewing Plaintiff's gastroenterologist records and May 2020 Mayo Clinic records, Dr. Norris also determined that Plaintiff's abdominal pain was likely caused by fibromyalgia rather than Crohn's disease. (AR 1272). However, he determined that the severity of Plaintiff's debilitating joint pain was inconsistent with Dr. Ahn and Dr. Arment's benign joint and physical examination findings, namely because Plaintiff did not present in acute distress. (AR 1276-77). Finally, Unum considered Plaintiff's supplemental declaration, noting that she schedules her medical appointments on days when she is at her best. (AR 1273). Ultimately, Unum concluded that Plaintiff's records "d[id] not explain how an individual reporting pain at a level of 8 out of 10 can also be in no acute distress." (*Id.*). Accordingly, Unum reasonably considered Plaintiff's reports of pain when it made its denial decision. The fact that Plaintiff believes that an alternative decision would have been reasonable is not the issue. *See Block*, *supra,* 952 F.2d at 1452.

Next, the Court will address Plaintiff's argument that Unum abused its discretion to the extent that it required Plaintiff to prove her disability with objective evidence. Plaintiff relies on *DuPerry v. Life Ins. Co. of N.A.*, 632 F.3d 860 (4th Cir. 2011).

In *DuPerry*, the plaintiff filed a disability claim asserting that her fatigue and fibromyalgia were disabling. In support of her claim, the plaintiff submitted the following materials: her declaration describing the severity of her pain, treating physicians' opinions that her pain and

44

fatigue precluded her from working, and video footage of herself. The plan administrator's reviewing physician determined that the plaintiff was not disabled "given the lack of physical findings associated with the diagnosis." There, the court found that the policy did not require the plaintiff to submit physical evidence of her disability. Thus, the court held that it was unreasonable for the plan administrator to deny her claim on that basis. 632 F.3d at 873.

Unlike in *DuPerry*, in this case in order to be eligible for disability benefits under the Plan, a participant must show the following as proof of a claim:

> the extent of your disability, including restrictions and limitations preventing you from performing your regular occupation; and

> the name and address of any hospital or institution where you received treatment, including all attending physicians.

> **We may request that you send proof of continuing disability** indicating that you are under the regular care of a physician. This proof, provided at your expense, must be received within 45 days of a request by us.

> **In some cases, you will be required to give Unum authorization to obtain additional medical information and to provide non-medical information as part of your proof of claim, or proof of continuing disability. Unum will deny your claim, or stop sending you payments, if the appropriate information is not submitted.**

(AR 67) (emphasis added). In this case, the administration record supports that Unum acted reasonably. For example, Unum requested additional records from Drs. Ria, Ahn, Malhotra, and Alex when it performed its review of Plaintiff's appeal. (AR 581). In addition, Dr. Norris's review discussed the following objective evidence of Plaintiff's fibromyalgia: joint examination, x-ray, and MRI findings from the Mayo Clinic; physical and diagnostic examinations from Drs. Alex, Malhotra, and Dr. Rai. (AR 848-51, 1003-08, 1209-20). Moreover, because the Plan allows Unum to obtain medical information as proof of a claim, it was reasonable for Dr. Norris to conclude that

the severity of Plaintiff's fibromyalgia diagnosis and symptoms did not preclude her from performing sedentary work given the absence of significant musculoskeletal or other pathology. *See Pettaway*, *supra*, 699 F. Supp. 2d at 202 ("[I]f objective medical evidence was not required, reviewing the validity of long term disability claims would be meaningless because plan administrators would be forced to accept as adequate all subjective claims of participants.") (citation omitted).

Upon reviewing the administrative record, the Court finds unavailing Plaintiff's final argument that it was unreasonable for Unum to credit its physicians' opinions over her treating physician's opinion. As held above, Unum is not required to give increased weight to a treating physician's opinion. *See Black & Decker Disability Plan*, *supra*, 538 U.S. at 834; *Marcin D.C. Cir.*, *supra*, 861 F.3d at 263. Thus, Unum's decision to give its Dr. Norris's opinion more weight was reasonable. *See Loucka*, 334 F. Supp. 3d at 11 ("it is within a plan administrator's discretion to have the "ability to choose among conflicting medical evidence").

### 4. Evaluation of Treatment Course

With respect to her treatment course, Plaintiff argues the following: (1) that Dr. Norris incorrectly determined that Plaintiff's treatment deescalated; and (2) that it was an abuse of discretion for Unum to deny Plaintiff's claim because she did not obtain a sleep study. (Cross Motion, pp. 23-26).

Unum contends that there is no evidence of bias because it considered all pertinent evidence in its review and allowed Plaintiff ample opportunity to supplement her appeal. (Reply, p. 11).

Plaintiff first argues that contrary to Dr. Norris's review, she sought treatment consistent with the severity of her symptoms. Here, Dr. Norris determined that Plaintiff's treatment

deescalated in his report. (AR 1041). Dr. Norris explained that he arrived at this conclusion upon examining all of Plaintiff's medical records, noting that she stopped seeing Dr. Rai in January 2020, discontinued her Prednisone use in February 2020, and only saw her primary care physician as of February 2020. (AR 1274). Thus, there is substantial evidence in the administrative record to support that Unum acted reasonably when it determined that Plaintiff's treatment deescalated before the U.S. Government implemented COVID-19 restrictions. *See Mobley*, *supra.*, 405 F.Supp. 2d at 48 (finding that a plan administrator may reach a conclusion that is technically incorrect so long as it is reasonably supported by the administrative record).

Plaintiff also argues that it was an abuse of discretion for Unum to discount her chronic fatigue because she did not obtain a sleep study. (AR 1276). However, there is substantial evidence in the record to support that Unum acted reasonably because it notified Plaintiff of its reasons for denial in its March 10, 2021 letter and then allowed Plaintiff the opportunity to respond to the same. (AR 1222). Plaintiff then supplemented her appeal with evidence that her May 2020 Mayo Clinic sleep study revealed normal results further. (AR 1259). Having given Plaintiff an opportunity to further support her claim, Unum ultimately acted reasonably when it considered her sleep study and concluded that Plaintiff's fatigue was not continuously disabling. *See Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 872 (9th Cir. 2008) ("a review of the reasons provided by the administrator allows for a full and fair review of the denial decision, also required under ERISA").

### C.  Analysis: Demands of Occupation

Plaintiff argues that it was unreasonable for Unum to conclude that she could perform sedentary work given her need to sit for more than 75% of the workday and the following debilitating symptoms: joint and abdominal pain, nausea, fatigue, and brain fog. (Cross Motion,

pp. 25-26). Specifically, Plaintiff asserts that Unum's denial is not supported by substantial evidence because it ignored Dr. York-Jordan's opinion that she suffered from brain fog. (*Id.*, p. 26). Unum counters that it performed the appropriate vocational analysis and it considered Plaintiff's occupational demands. (Reply, pp. 11-12).

The Court examined the entire administrative record to determine whether Unum's review of Plaintiff's review of Plaintiff's occupation took into consideration both the physical and mental demands of her work.  Here, there is substantial evidence to support that Unum acted reasonably. First, Unum obtained a second vocational review from Ms. Marsiano, during which Ms. Marsiano considered the specific challenges in Plaintiff's declaration. (AR 848-51, 1271, 1274). Specifically, Ms. Marsiano's vocational review considered that Plaintiff worked more than 40 hour weeks, would need to sit for 9 hours per day, and would be limited to 23 minutes of typing. After reviewing all occupational and vocational evidence in Plaintiff's file, Ms. Marsiano determined that Plaintiff had the capacity to perform sedentary work. (AR 849). In addition, Ms. Marsiano qualified her conclusion by noting that Plaintiff could utilize a sit/stand desk, speech recognition software, and take frequent breaks in accordance with OSHA, NIOSH, and the CDC. (*Id.*). Moreover, Dr. York-Jordan based her review solely on Plaintiff's subjective complaints, but no other treating physician noted that Plaintiff experienced cognitive defects. (*Id.*). Thus, based on the administrative record, it was reasonable for Unum to rely on Ms. Marsiano's vocational review. *But see Wykstra v. Life Ins. Co. of N.A.*, 849 F. Supp. 2d 285, 295 (N.D.N.Y. 2012), *amended in part,* Civ. No. 5:9-01291 (NPM), 2012 WL 13028648 (N.D.N.Y. Mar. 16, 2012) (holding it was "arbitrary and capricious for [the plan administrator] to rely on the [vocationalist], because it relied upon an erroneous assessment of Plaintiff's physical capabilities").

In addition, Unum considered evidence of Plaintiff's symptoms before, during, and beyond the elimination period to determine whether there was evidence to support Dr. York-Jordan's conclusion that her brain fog was debilitating. (AR 1270-71). Specifically, Dr. Norris explained that Plaintiff's file was devoid of facts to support her reports of brain fog, namely because Plaintiff did not submit any records indicating referral for neuropsychological testing which "would be expected if there were significant clinical or functional concerns related to cognitive dysfunction." (AR 1039). Nonetheless, Dr. Norris examined the August 4, 2020 disability evaluation, even though it did not provide relevant information to Plaintiff's functional status during the elimination period. (AR 1274). In viewing Dr. Miller's evaluation, Dr. Norris determined that even Plaintiff's treating physician supported his conclusion that Plaintiff could perform sedentary work. (AR 1218). He based his conclusion on Dr. Miller's disability examination findings, which reveal that Plaintiff could "lift/carry up to 10 lbs. occasionally, stand/walk at least 2 hours per 8-hour workday, sit about 6 hours per 8-hour workday, and sit constantly." (*Id.*). Dr. Norris noted that Dr. Miller reached the opposite conclusion because she found that Plaintiff was limited in her ability to push or pull by her upper extremities. (*Id.*). Dr. Norris then considered whether Plaintiff was limited by her ability to push or pull during the elimination period. However, he ultimately found that this limitation was not supported by the examinations performed by Plaintiff's rheumatologists and gastroenterologists during the elimination period. (*Id.*). Accordingly, Dr. Norris concluded that Plaintiff's symptoms of abdominal and joint pain and fatigue did not preclude her from performing sedentary work. (*Id.*). Furthermore, it was reasonable for Unum to give Drs. Miller and York-Jordan's less weight than Dr. Norris. *See Doley v. Prudential Ins. Co. of Am.,* Civ. No. 05-277, 2006 WL 785374, at *2 (D.D.C. Mar. 28, 2006) ("It is not an abuse of discretion to value the

opinions of the insurer's own medical consultants over those of the participant's treating physician").

In sum, having reviewed the administrative record, the Court finds that the administrator did not abuse its discretion in finding that Plaintiff was capable of performing the demands of her occupation. Put another way, Unum's decision was reasonable and it clearly stated its reasons underpinning its decision. *See Marcin, supra,* 138 F. Supp. 3d at 18 ("whether the insurer's determination was reasonable on this record depends in large measure on what that determination was and the stated reasons behind it") (internal quotations and citation omitted).

### D.  Analysis: Pre-existing Condition

Plaintiff argues that Unum abandoned its pre-existing condition argument in its March 10, 2021 letter. Plaintiff further asserts that substantial evidence does not support Unum's denial of her claim under the pre-existing condition limitation because her symptoms markedly changed in June 2019. (Cross Motion, pp. 26-28). Unum counters that: (1) there is no evidence that Plaintiff's symptoms in 2019 were independent from the 2018 symptoms; (2) the Plan does not require Plaintiff's pre-existing condition to be debilitating; and (3) it did not have discretion to waive any term of the Plan. (Reply, pp. 12-14).

As held above, decision is "reasonable" so long as it "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Buford, supra,* 290 F. Supp. 2d at 100. Moreover, a "court must not overturn a decision found to be reasonable, even if an alternative decision also could have been considered reasonable." *Block*, *supra*,  952 F.2d at 1452 (internal quotation marks omitted); *see also Mobley v. Cont'l Cas. Co.*, 405 F.Supp. 2d at 48.

In this case, the administrative record contains adequate evidence that Unum did not abandon its right to later assert the pre-existing condition limitation. For example, in two instances,

Unum explained that it reserved its rights to later evaluate the pre-existing nature of Plaintiff's claimed disability. Unum specifically noted that:

> We are not currently asserting the pre-existing condition provision as a basis of the appeal decision. We reserve our right to fully evaluate the pre-existing nature of [Plaintiff]'s claimed disability and assert the pre-existing condition provision in the policy in the future if additional information becomes available.

(AR 1271, 1275).

Importantly, Unum explained that it reserved its rights because:

> Our appeal review concluded that it is unclear if the nature of [Plaintiff]'s reported abdominal pain as of the claimed date of disability was the same as her reported abdominal pain treated during the pre-existing condition look back period. We are not asserting the pre-existing condition exclusion as a basis of this appeal decision at this time.

(AR 1271). It was reasonable for Unum to reserve its rights because Ms. Purtell and Dr. Norris both opined that it was unclear whether Plaintiff's abdominal pain as of July 18, 2019 was the same as her reported abdominal pain during the pre-existing condition look-back period. (AR 1027; 1219). Moreover, Unum substantial evidence supports that Unum acted reasonably because it explained this position in its March 10, 2021 letter to Plaintiff. (AR 1222-23). Moreover, Unum allowed Plaintiff the opportunity to supplement her appeal with additional records in response. (*Id.*). Thus, Unum did not abuse its discretion when it reserved its rights. *Buford,* 290 F. Supp. 2d at 100.

### E.  Analysis: Unum's Decision-Making Process

Finally, Plaintiff argues that Unum's review was not reasoned or principled because its reviewing physicians performed a purely paper review "riddled with flaws." (Cross Motion, pp. 23-25). Unum contends that its review process was deliberate and principled. (Reply, pp. 12-14).

Regarding the allegation that Unum performed a biased review of Plaintiff's claim by failing to conduct a physical examination of her,  Unum was not required to do so. *See Chipman*, *supra*, 480 F. Supp. 3d at 184 n. 10 (citing *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 577 (7th Cir. 2006) ("[In reviewing medical files], doctors are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation"). As held above, Unum did not abuse its discretion in finding that Plaintiff failed to demonstrate her disability under the Plan. Thus, Unum reasonably concluded that Plaintiff was capable of performing sedentary work and was therefore not disabled under the Plan. *Block*, *supra,* 952 F.2d at 1452.

## IV.    CONCLUSION

For the foregoing reasons, the Motion, (ECF No. 55), is **DENIED**, and the Counter Motion, (ECF No. 57), is **GRANTED**.

The Clerk of the Court shall enter judgment in favor of the Defendant and close the case.

A separate Order will follow.


Dated:  March 29, 2024                                          /s/
                                                    The Honorable Gina L. Simms
                                                    United States Magistrate Judge